IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CSMN OPERATIONS LLC, CSMN
OPERATIONS II LLC, PATIENTS 1-11,
13-21, 23-25, 27, and 29-42, KADEN KETO,
KYMBELIE BENNETT, NOAH FERRELL,          Case No. 1:25-cv-1965-WJM-CYC
ANDREW GURISKO, ANNA
GOUCHNOR, BRAD WEISS, BRIANA
KHAN, CAROLINE MASULLO, DAVID
RECHSTEINER, DAYLON MARTIN,
BRANDON FRIEDMAN, ISABELLE
DELTERGO, JOSEPH DEVITA,
KATHLEEN DOSS, KELLY JOHNSON,
KIMBERLY FINDLEN, MEGAN
ARANDA THOMPSON, MICHAEL
BRYANT, PIERRE VILLERE, SARAH
AMES, TIMOTHY BURKE, TOBY
BRESKI, TRISH PHTHALO, VICTORIA
HENSEL, JOHN ARMOUR, MITCHELL
BIENER, CONNER COLEMAN, DIANA
COWGILL, DIANNA DESHLER, TAYLOR
FLECK, PRISCILLA GONZALEZ, JAMES
HAGENEY, JAMES HOLLOWAY, EMILY
LAMAR, MICHAEL MEYER, KRISTIN
MORRIS, TAMARA SALTONSTALL,
MATT SCHABER, JESSICA SIGMON,
ELIZABETH STONE, TAMARA TAYLOR,
MATTHEW URLACHER, and GLENN
HOWARD, and PATIENT DOES 1-1000,

     Plaintiffs,

vs.

ROCKY MOUNTAIN HOSPITAL and
MEDICAL SERVICE INC, d/b/a ANTHEM
BLUECROSS and
BLUESHIELD,ANTHEM BLUE CROSS
BLUE SHIELD, ANTHEM BLUE CROSS
and BLUE SHIELD of GEORGIA,
ANTHEM BLUE CROSS and BLUE
SHIELD NEVADA, ANTHEM BLUE
CROSS BLUE SHIELD of CALIFORNIA,

1

ANTHEM BLUE CROSS and BLUE SHIELD VIRGINIA, ANTHEM BLUE CROSS and BLUE SHIELD CONNECTICUT, ANTHEM BLUE CROSS and BLUE SHIELD KENTUCKY, ANTHEM BLUE CROSS and BLUE SHIELD MAINE, ANTHEM BLUE CROSS and BLUE SHIELD OHIO, ANTHEM BLUE CROSS and BLUE SHIELD WISCONSIN, ANTHEM BLUE CROSS and BLUE SHIELD INDIANA, ANTHEM BLUE CROSS and BLUE SHIELD MISSOURI, BLUE CROSS and BLUE SHIELD of NORTH CAROLINA, BLUE CROSS & BLUE SHIELD of RHODE ISLAND, BLUE CROSS and BLUE SHIELD of ALABAMA, BLUE CROSS BLUE SHIELD of ARIZONA, FLORIDA BLUE, BLUE CROSS and BLUE SHIELD of HAWAII, BLUE CROSS and BLUE SHIELD of ILLINOIS, BLUE CROSS and BLUE SHIELD of KANSAS, BLUE CROSS and BLUE SHIELD of KANSAS CITY, BLUE CROSS and BLUE SHIELD of LOUISIANA, BLUE CROSS and BLUE SHIELD of MASSACHUSETTS, BLUE CROSS and BLUE SHIELD of MINNESOTA, BLUE CROSS and BLUE SHIELD of MONTANA, BLUE CROSS and BLUE SHIELD of NEBRASKA, BLUE CROSS and BLUE SHIELD of OKLAHOMA, BLUE CROSS and BLUE SHIELD of SOUTH CAROLINA, BLUE CROSS and BLUE SHIELD of TEXAS, BLUE CROSS BLUE SHIELD of WYOMING, BLUE CROSS BLUE SHIELD of MICHIGAN, BLUE CROSS of IDAHO, BLUE SHIELD of CALIFORNIA, BLUE CROSS BLUE SHIELD of NORTH DAKOTA, BLUECROSS BLUESHIELD of TENNESSEE, CAREFIRST BLUECROSS BLUESHIELD,  EXCELLUS BLUECROSS BLUESHIELD, WORLDWIDE INSURANCE SERVICES, LLC d/b/a GEOBLUE, HIGHMARK BLUE CROSS BLUE SHIELD of WESTERN NEW YORK,

2

HIGHMARK BLUE CROSS BLUE SHIELD DELAWARE, HIGHMARK BLUE SHIELD, HIGHMARK BLUE CROSS BLUE SHIELD, HORIZON BLUE CROSS and BLUE SHIELD of NEW JERSEY, INDEPENDENCE BLUE CROSS, BLUE CROSS and BLUE SHIELD of NEW MEXICO, CAPITAL BLUE CROSS, PREMERA BLUE CROSS, PREMERA BLUE CROSS AND BLUE SHIELD OF ALASKA, REGENCE BLUESHIELD, REGENCE BLUECROSS BLUESHIELD of OREGON, REGENCE BLUECROSS BLUESHIELD of UTAH, REGENCE BLUESHIELD of IDAHO, WELLMARK BLUE CROSS and BLUE SHIELD, the LUTHER HOLDING COMPANY HEALTH WELFARE PLAN, the ASSOCIATE of STATE FARM GROUP MEDICAL PPO PLAN, the AMAZON AND SUBSIDIARIES SHARED DEDUCTIBLE PLAN, the WELLS FARGO & COMPANY HEALTH PLAN, the TULANE UNIVERSITY WELFARE BENEFITS PLAN, the WEGMANS EMPLOYEE WELFARE BENEFITS PLAN, the PACCAR WELFARE BENEFITS PLAN, the CAPITAL ONE FINANCIAL CORPORATION EMPLOYEE WELFARE PLAN, the AVAGO TECHNOLOGIES EMPLOYEE BENEFITS PLAN, the DAVITA HEALTH AND WELFARE PLAN, the DOMTAR US SALARIED PLAN, the CONTRACTORS HEALTH TRUST, the MICROSOFT CORPORATION WELFARE PLAN, the BAKER TILLY GROUP INSURANCE PLAN, the EMP MANAGEMENT GROUP, LTD. HEALTH BENEFITS PLAN, the IAFF HEALTH & WELLNESS PLAN OF THE NORTHWEST FIRE FIGHTERS BENEFITS TRUST, the SNC-LAVALIN EMPLOYEE BENEFITS PLAN, the AHOLD USA INC. MASTER WELFARE PLAN, the PALO ALTO NETWORKS WELFARE BENEFIT PLAN, the MEDNAX SERVICES, INC.

3

EMPLOYEE WELFARE BENEFITS PLAN,
the WELLSKY HEALTH AND WELFARE
PLAN, the PATHWAY VET ALLIANCE
LLC HEALTH AND WELFARE PLAN, the
VOX MEDIA LLC EMPLOYEE BENEFITS
PLAN, the GLENMEDE CORPORATION
WELFARE BENEFIT PLAN, the G&A
OUTSOURCING, INC. dba G&A
PARTNERS EMPLOYEE BENEFIT PLAN,
and PLAN DOES 1-1000,

       Defendants,

---

## FIRST AMENDED COMPLAINT

---

Plaintiffs CSMN Operations LLC and CSMN Operations II LLC, (collectively doing

business under the trademarked name All Points North ("APN"), Patients 1-11, 13-21, 23-25, 27,

and 29-42, Kaden Keto (f/k/a Patient 12), Kymbelie Bennett (f/k/a Patient 22), Noah Ferrell

(f/k/a Patient 26), Andrew Gurisko, Anna Gouchnor, Brad Weiss, Briana Khan, Caroline

Masullo, David Rechsteiner, Daylon Martin, Brandon Friedman, Isabelle Deltergo, Joseph

Devita, Kathleen Doss, Kelly Johnson, Kimberly Findlen, Megan Aranda Thompson, Michael

Bryant, Pierre Villere, Sarah Ames, Timothy Burke, Toby Breski, Trish Phthalo, Victoria

Hensel, John Armour, Mitchell Biener, Conner Coleman, Diana Cowgill, Dianna Deshler, Taylor

Fleck, Priscilla Gonzalez, James Hageney, James Holloway, Emily Lamar, Michael Meyer,

Kristin Morris, Tamara Saltonstall, Matt Schaber, Jessica Sigmon, Elizabeth Stone, Tamara

Taylor, Matthew Urlacher, and Glenn Howard, and Patient Does 1-1000 (collectively, "Assignor

Patients"), through their undersigned counsel, complain and allege against Defendants Rocky

Mountain Hospital and Medical Service Inc. d/b/a Anthem BlueCross and BlueShield

("Anthem"), and Anthem Blue Cross Blue Shield, Anthem Blue Cross and Blue Shield of

Georgia, Anthem Blue Cross and Blue Shield Nevada, Anthem Blue Cross Blue Shield of California, Anthem Blue Cross and Blue Shield Virginia, Anthem Blue Cross and Blue Shield Connecticut, Anthem Blue Cross and Blue Shield Kentucky, Anthem Blue Cross and Blue Shield Maine, Anthem Blue Cross and Blue Shield Ohio, Anthem Blue Cross and Blue Shield Wisconsin, Anthem Blue Cross and Blue Shield Indiana, Anthem Blue Cross and Blue Shield Missouri, Blue Cross and Blue Shield of North Carolina, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Alabama, Blue Cross Blue Shield of Arizona, Florida Blue, Blue Cross and Blue Shield of Hawaii, Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Kansas, Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Louisiana, Blue Cross and Blue Shield of Massachusetts, Blue Cross and Blue Shield of Minnesota, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of Nebraska, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of South Carolina, Blue Cross and Blue Shield of Texas, Blue Cross Blue Shield of Wyoming, Blue Cross Blue Shield of Michigan, Blue Cross of Idaho, Blue Shield of California, Blue Cross Blue Shield of North Dakota, BlueCross BlueShield of Tennessee, CareFirst BlueCross BlueShield, Excellus BlueCross BlueShield, Worldwide Insurance Services, LLC d/b/a GeoBlue, Highmark Blue Cross Blue Shield of Western New York, Highmark Blue Cross Blue Shield Delaware, Highmark Blue Shield, Highmark Blue Cross Blue Shield, Horizon Blue Cross and Blue Shield of New Jersey, Independence Blue Cross, Blue Cross and Blue Shield of New Mexico, Capital Blue Cross, Premera Blue Cross, Premera Blue Cross and Blue Shield of Alaska, Regence BlueShield, Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, Regence BlueShield of Idaho, Wellmark Blue Cross and Blue Shield (collectively, the "Anthem Affiliate Claims Administrators"), the Luther Holding Company Health Welfare Plan, the

5

Associate of State Farm Group Medical PPO Plan, the Amazon and Subsidiaries Shared

Deductible Plan, the Wells Fargo & Company Health Plan, the Tulane University Welfare

Benefits Plan, the Wegmans Employee Welfare Benefits Plan, the PACCAR Welfare Benefits

Plan, the Capital One Financial Corporation Employee Welfare Plan, the Avago Technologies

Employee Benefits Plan, the Davita Health and Welfare Plan, the DOMTAR US Salaried Plan,

the Contractors Health Trust, the Microsoft Corporation Welfare Plan, the Baker Tilly Group

Insurance Plan, the EMP Management Group, Ltd. Health Benefits Plan, the IAFF Health &

Wellness Plan of the Northwest Fire Fighters Benefits Trust, the SNC-Lavalin Employee

Benefits Plan, the Ahold USA Inc. Master Welfare Plan, the Palo Alto Networks Welfare Benefit

Plan, the MEDNAX Services, Inc. Employee Welfare Benefits Plan, the WellSky Health and

Welfare Plan, the Pathway Vet Alliance LLC Health and Welfare Plan, the Vox Media LLC

Employee Benefits Plan, the Glenmede Corporation Welfare Benefit Plan, the G&A

Outsourcing, Inc. dba G&A Partners Employee Benefit Plan, (the "Named Self-Funded Plans"),

and Plan Does 1-1000 (collectively, "the Plans"), as follows:

## PARTIES, JURISDICTION AND VENUE

1.    All Points North ("APN") is the trade name of a set of affiliated entities that operate

licensed and accredited treatment facilities in Colorado for individuals who suffer from and

seek treatment for substance use disorders, trauma, and other mental illnesses.

2.    CSMN Operations LLC is a Colorado limited liability company which provides treatment

services for APN's Lodge facility in Edwards, Colorado.

3.    CSMN Operations II LLC is a Colorado limited liability company which provides

treatment services for APN's Aurora, Colorado substance abuse detoxification facility.

4.    APN is the holder of assignments of benefits ("AOBs") for each of the individuals who received mental health and substance use disorder treatment.

5.    These AOBs also transferred any and all other ERISA rights to APN, containing a provision that states each individual receiving treatment:

Hereby authorize[s] my Insurer to assign and transfer any and all applicable plan Benefits and rights to [APN], including the right to receive any applicable plan documents/remedies or disclosures, to file claims and receive payment of those claims on [the individuals'] behalf, and to pursue appeals and grievances, administrative reviews/hearings, litigation and other actions on [the individuals'] behalf. This authorization includes **any and all other rights permissible under ERISA, state and or federal laws**, as well as entitled plan programs related to the Benefits.[1]

6.    The APN Plaintiffs made this language intentionally broad so the Assignor Patients could understand and appreciate that they were "any and all" rights, including the right to pursue violations of the Parity Act under 29 U.S.C. §1132(a)(3) of ERISA.

7.    In addition to the AOBs, APN submitted claim forms on behalf of the Assignor Patients to Anthem. On each of these UB-04 claim forms, the box reflecting that an assignment had been made was checked.

8.    As a result, Anthem, the Anthem Affiliate Claims Administrators, and the Plans were aware of the Assignor Patients' assignments to APN from the moment they received the claims for coverage in relation to each patient.

9.    Anthem is an independent licensee of the nationwide BlueCross and BlueShield network of providers and offered insurance and claims administration services to hundreds of individuals receiving treatment at APN facilities, including the Assignor Patients.

---

[1] Emphasis added.

10. The nationwide BlueCross and BlueShield network, comprised of all the Anthem Affiliate Claims Administrators, advertises, as a benefit of its network, that participants and beneficiaries may receive coverage and the benefit of network contracts obtained by each of its licensees, including Anthem's network in Colorado.

11. Participants in network plans offered by any of the Anthem Affiliate Claims Administrators are required to, and do, submit claims for coverage of treatment to the local BlueCross and BlueShield licensee in the state in which treatment is rendered[2] – in this case, Anthem.

12. All of the treatment at issue in this case occurred at APN's facilities in Colorado, and the claims were submitted to Anthem in Colorado for processing.

13. While the Anthem Affiliate Claims Administrators administer and/or insure claims with respect to their offered benefit plans, Defendant Anthem, which operates in Colorado, acted as an agent for the purposes of processing claims for the treatment APN provided to the Assignor Patients.

14. Under the Employee Retirement Income Security Act ("ERISA"), any individual or entity who exercises authority or control respecting the management or disposition of a Plan's assets and anyone who has discretionary authority or responsibility acts as a fiduciary. *See* 29 U.S.C. §1002(21)(A)(i-iii); *see also* 29 C.F.R. 2509.75-5 D1 and 2509.75-8 D3.

15. As the agent for purposes of claims administration with respect to any claims submitted for treatment in the State of Colorado, Anthem exercised a degree of discretionary authority and control with respect to the disposition of the benefits in this case and to qualify as a fiduciary under the ERISA plans at issue in this case.

---

[2] Often referred to as the "Host" Blue.

16. As such, Anthem acted as a fiduciary with respect to Plaintiffs' claims and was required to discharge its duties with respect to the various plans "solely in the interest of the participants and beneficiaries" and for the exclusive purpose of providing benefits to participants and beneficiaries of the plans and defraying the reasonable expenses of administering the plans. *See* 29 U.S.C. §1104.

17. The Plans in this case are responsible for payment of claims arising under self-funded plans administered by Anthem and the Anthem Affiliate Claims Administrators, while Anthem and the Anthem Affiliate Claims Administrators are responsible for payment of claims arising under fully-insured benefit plans.

18. Because most of the health benefit plans at issue in this case are governed by and subject to ERISA, venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions and this Court also has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

19. The remedies the Plaintiffs seek are appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Anthem's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), and appropriate prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. §1132(g). In the alternative, Plaintiffs seek remedies under C.R.S. §10-16-106.7 and C.R.S. §10-16-704 where appropriate to enforce Colorado's own network adequacy and direct payment requirements, and Plaintiffs incorporate the un-preempted provisions of that statute and its implementing regulations in pursuing its claims under MHPAEA.

## BACKGROUND FACTS

20. APN operates two facilities in Colorado at issue in this case. First, Plaintiff CSMN Operations II operates a sub-acute inpatient detox facility providing 24/7 medical and mental health services as well as intensive outpatient treatment to patients in Aurora, Colorado ("Aurora Detox"). Second, Plaintiff CSMN Operations operates a sub-acute psychiatric residential treatment facility treating both patients with mental health and substance use disorders in Edwards, Colorado ("APN Lodge").

21. Both the APN Lodge and Aurora Detox have met Anthem's credentialing requirements since 2021.

22. Because the APN Lodge and Aurora Detox have met Anthem's credentialing requirements for some time, the vast majority of treatment received by the Assignor Patients was pre-authorized by Anthem.

23. However, in spite of being qualified and licensed to provide substance use disorder and mental health treatment services, neither Aurora Detox or APN Lodge has been able to negotiate a fair rate with Anthem to become a contracted, network provider.

24. Beginning in June, 2023, APN has been communicating with Anthem in an effort to stop Anthem's "paid to subscriber" payment scheme for out of network providers like APN. In this scheme, Anthem issues payment for claims directly to the policyholder, rather than to the provider. This scheme forces APN into the position of having, often unsuccessfully, to collect a debt from current and former patients.

25. The APN Plaintiffs are plaintiffs in another lawsuit against Anthem seeking payment of claims for which Anthem remitted payments directly to some of the Assignor Patients rather than APN, in violation of valid assignments of benefits.[3]

26. Anthem and the Anthem Affiliate Claims Administrators have refused to communicate with APN about the claims at issue in that case and have failed to respond to the network sufficiency concerns raised by Plaintiffs before initiating this litigation.

27. Whenever APN communicated with Anthem and the Anthem Affiliate Claims Administrators prior to litigation, requests for plan documents governing the respective Assignor Patients' plans were ignored.

28. The APN Plaintiffs were unable to obtain copies of the plan documents governing the respective Assignor Patients' plans.

29. As a result, the APN Plaintiffs had no opportunity to examine the Assignor Patients' plans before litigation, and could not have been on notice of the anti-assignment clauses present in several of them nor the specific appeal procedures outlined by these plan documents.

30. For the claims at issue in this case, Anthem approved medical necessary care for individuals receiving treatment at APN facilities.

31. Whether paid directly or indirectly, Anthem, the Anthem Affiliate Claims Administrators, and the Plans pay APN's claims at a substantially reduced rate relative to both APN's billed charges and, even, the rate that Anthem pays network providers.

32. Ordinarily, claims for services rendered at out-of-network facilities are paid at a higher rate than network rates to compensate the facility for the lengthier process to obtain payment

---

[3] Civil Action No. 1:24-cv-00536-KAS in the United States District Court for the District of Colorado.

for its services and for the higher risk that coverage of the service is denied.  In turn, Anthem imposes on its participants and beneficiaries, and collects from them, higher cost sharing amounts in the form of co-insurance, copayments, deductibles, and other amounts when those participants and beneficiaries obtain treatment from out-of-network providers.

33. The rates that Anthem, the Anthem Affiliate Claims Administrators, and the Plans have compensated APN at are lower, even, than APN's cost to provide essential mental health services to individuals seeking mental health and substance use disorder treatment in already-underserved areas of Colorado.

34. This systematic underpayment of claims for treatment at APN by the Defendants is gradually jeopardizing the ability of one of the only providers of subacute residential treatment on the Western Slope of Colorado to continue to provide this critical care.

35. If Defendants' conduct continues, APN may be forced to reduce or eliminate the essential services it provides, further contributing to an already-dire shortage of providers serving the half a million residents of the Western Slope and anyone seeking treatment in the area.

36. In doing so, Anthem directly harms the participants and beneficiaries of Anthem plans seeking coverage of mental health treatment in Colorado, including the Assignor Patients.

37. Anthem's practice of making payments directly to the Assignor Patients has placed substantial sums of money into the hands of vulnerable individuals attempting to recover from substance use and addiction.

38. Experts have noted that AOBs and other forms of payment assignment can help reduce substance use and the likelihood of relapse by restricting a patient's ability to seek out and

pay for substances.[4]

39.    Conversely, experts have also noted that sudden windfalls of money are a well-recognized trigger for relapses by substance users. Even expected income in the form of social security disability income or payments from an employer can contribute to the "check effect," wherein at-risk recipients are far more likely to abuse substances, require hospitalization, and even die in the immediate aftermath of receiving an influx of money.[5]

40.    In this way, not only does Anthem threaten the existence of a critical provider of mental health and substance use disorder care on the Western Slope, it also acts in a way that makes APN's patients substantially more likely to relapse into the very behaviors they received treatment for.

41.    Anthem's practice of making payments directly to the Assignor Patients in violation of the AOBs and Colorado law has contributed, among the Assignor Patients, to multiple overdoses and at least one death by overdose that APN is aware of.

42.    Anthem is intent on continuing this conduct, as it refused to make any good-faith attempt to negotiate a network contract with APN and simultaneously claims in its regulatory filings to the state of Colorado that APN's facilities do not exist, and, consequently, that there are no facilities they could plausibly contract with to provide care to insureds on the Western Slope of Colorado.

---

[4] *See generally* Marc I. Rosen, M.D., *Cross-Disciplinary Perspectives on Money Management by Addicts*, AM. J. DRUG ALCOHOL ABUSE, June 10, 2025, https://pmc.ncbi.nlm.nih.gov/articles/PMC3320213/ (collecting sources)
[5] *See generally id*.

43. Both through its practice of paying the Assignor Patients directly and through its refusal to acknowledge the existence of APN and misrepresentations to the State of Colorado, Anthem has caused and continues to cause irreparable harm to the Plaintiffs.

44. In failing to provide any network options for residential treatment on the Western Slope of Colorado and engaging in its pay-to-subscriber practices, Anthem is gradually eliminating one of the only providers of this type of care for half a million Coloradans, including many of the Assignor Patients.

45. Without access to network options for residential treatment and substance use detoxification, the Assignor Patients may be unable to receive critical care they desperately need. The Assignor Patients are forced to either pursue prohibitively costly out-of-network care, if they can afford it, or forgo the appropriate level of treatment entirely.

46. As a result, many individuals who would otherwise be able to receive critical, medically necessary treatment are unable to do so.

47. Especially for patients who cannot be safely treated in an outpatient setting, the inability to access and receive residential treatment or substance use detox care can result in irreparable injury or even death.

48. In addition to Patients 1-42, the individually-named patient plaintiffs, Anthem, the Anthem Affiliate Claims Administrators, and the Named Self-Funded Plans, APN avers that it continues to identify unnamed Plan Does and Patient Does with claims administered by Anthem for which Anthem or an Anthem Affiliate Claims Administrator has systematically underpaid the claims in violation of MHPAEA and Colorado's network adequacy regulations, as outlined in the First and Second Causes of Action below.

14

49.    APN identifies the Named Self-Funded Plans, Patients 1-42, and the named patient plaintiffs to provide examples of a small portion of the claims at issue in this case. APN has identified nearly 600 presently-unnamed Assignor Patients whose claims Anthem has underpaid as of the date of filing.  APN continues to work to identify and compile the information relating to the amount of Anthem's underpayment, the name of any presently-unidentified self-funded Plan Does, and the nature and amount of the claims at issue.

50.    Patients 1-18 are participants in fully-insured Plans insured and administered by Anthem, and upon information and belief, Patients 19-42 are participants in self-funded plans with claims administered by Anthem.

51.    Upon information and belief, all the fully-insured Plans covering Patients 1-18 are ERISA plans.

52.    Upon information and belief, several of the self-funded plans covering Patients 19-42 may be non-ERISA plans, but these remain subject to MHPAEA and/or Colorado state law.

53.    In addition, upon information and belief, Kaden Keto, Andrew Gurisko, Mitchell Biener, James Hageney, Brad Weiss, David Rechsteiner, Daylon Martin, Glenn Howard, Isabelle Deltergo, Joseph Devita, Kathleen Doss, Kelly Johnson, Megan Aranda Thompson, Pierre Villere, Timothy Burke, and Toby Breski are members of fully-insured ERISA plans.

54.    Upon information and belief, Kymbelie Bennett, Noah Ferrell, Anna Gouchnor, Brandon Friedman, Briana Khan, Caroline Masullo, Diana Cowgill, Michael Meyer, Kimberly Findlen, Michael Bryant, Sarah Ames, Trish Phthalo, and Victoria Hensel are members of self-funded ERISA plans.

55.    For a number of named patient plaintiffs, Plaintiffs were unable to locate information reflecting the appropriate Anthem Entity Claims Administrator or Plan Doe. The only

knowledge Plaintiffs have regarding these named patient plaintiffs is (1) that claims were submitted and processed through Anthem, (2) the treatment received by the patients in question, and (3) the amounts paid by Anthem on behalf of the relevant Plan Doe or Anthem Affiliate Claims Administrator.

**Patient 1**

56. Patient 1 is a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

57. Patient 1 was a resident of Colorado at all relevant times.

58. Patient 1 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

59. Patient 1 was admitted to treatment for substance use detoxification and residential treatment on January 13, 2025. Patient 1 spent six days at Aurora Detox, with the remainder of their treatment at the APN Lodge.

60. Over the course of Patient 1's treatment, APN billed Anthem $88,405.00 for the cost of their treatment.

61. APN submitted the AOB signed by Patient 1, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

62. Respecting the AOB in this instance, Anthem paid APN directly for its treatment of Patient 1.

63. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

64. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 1's claims at substantially reduced amounts compared both

16

to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

65. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 1, have suffered both financial injury and loss of access to medically necessary treatment resources.

66. Rather than pay the full amount at issue, Anthem paid only $10,260.08 for Patient 1's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

67. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $78,144.92 less than it should have for Patient 1's treatment.

68. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 1's treatment.

**Patient 2**

69. Patient 2 is a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

70. Patient 2 was a resident of Colorado at all relevant times.

71. Patient 2 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

72. Patient 2 was admitted to treatment for substance use detox and residential treatment on November 28, 2022. Patient 2 spent fifteen days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

17

73.  Over the course of Patient 2's treatment, APN billed $448,010.00 for the cost of their treatment.

74.  APN submitted the AOB signed by Patient 2, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

75.  Anthem paid APN directly for some of the claims, while paying others directly to Patient 2 in violation of the AOB and Colorado law.

76.  Anthem never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

77.  Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 2's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

78.  Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 2, have suffered both financial injury and loss of access to medically necessary treatment resources.

79.  Rather than pay the full amount at issue, Anthem paid only $114,783.31 for Patient 2's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

80.  As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $333,226.69 less than it should have for Patient 2's treatment.

18

81. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 2's treatment

**Patient 3**

82. Patient 3 is a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

83. Patient 3 was a resident of Colorado at all relevant times.

84. Patient 3 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

85. Patient 3 was admitted to treatment for substance use detox and residential treatment on December 2, 2023. Patient 3 spent two days at Aurora Detox, with the remainder of their treatment at the APN Lodge.

86. Over the course of Patient 3's treatment, APN billed $59,435.00 for the cost of their treatment.

87. APN submitted the AOB signed by Patient 3, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

88. Anthem paid APN directly for most of the claims, but paid several directly to Patient 3 in violation of the AOB and Colorado law.

89. Anthem and the Plan never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

90. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 3's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

19

91. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 3, have suffered both financial injury and loss of access to medically necessary treatment resources.

92. Rather than pay the full amount at issue, Anthem only paid $11,060.62 for Patient 3's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

93. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $48,374.38 less than it should have for Patient 3's treatment.

94. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 3's treatment

**Patient 4**

95. Patient 4 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

96. Patient 4 was a resident of Colorado at all relevant times.

97. Patient 4 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

98. Patient 4 was admitted to treatment for substance use detox and residential treatment on March 29, 2024. Patient 4 spent three days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

99. Over the course of Patient 4's treatment, APN billed $59,395.00 for the cost of their treatment.

20

100. APN submitted the AOB signed by Patient 4, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

101. In this instance, Anthem respected the AOB and paid APN directly for its services.

102. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

103. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 4's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

104. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 4, have suffered both financial injury and loss of access to medically necessary treatment resources.

105. Rather than pay the full amount at issue, Anthem only paid $7,759.20 for Patient 4's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

106. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $52,175.80 less than it should have for Patient 4's treatment.

107. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 4's treatment.

**Patient 5**

108. Patient 5 was a participant or beneficiary of a fully-insured plan insured and administered by Florida Blue, with claims processed through Anthem in this instance as the local affiliate and agent of Florida Blue for purposes of claims processing in the State of Colorado.

109. Patient 5 was a resident of Florida at all relevant times, and sought treatment while in Colorado.

110. Patient 5 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

111. Patient 5 was admitted to treatment for substance use detox and residential treatment on March 1, 2024. Patient 5 spent two days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

112. Over the course of Patient 5's treatment, APN billed $131,255.00 for the cost of their treatment.

113. APN submitted the AOB signed by Patient 5, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

114. In this instance, Anthem and Florida Blue respected the AOB for all of the claims except one, in that instance remitting payment directly to Patient 5 in violation of the AOB and Colorado law.

115. Anthem and Florida Blue never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

116. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 5's claims at substantially reduced amounts compared both

to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

117. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 5, have suffered both financial injury and loss of access to medically necessary treatment resources.

118. Rather than pay the full amount at issue, Anthem paid only $37,932.74 for Patient 5's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

119. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $93,322.26 less than it should have for Patient 5's treatment.

120. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 5's treatment.

**Patient 6**

121. Patient 6 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Oklahoma, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Oklahoma for purposes of claims processing in the State of Colorado.

122. Patient 6 was a resident of Oklahoma at all relevant times, and sought treatment while in Colorado.

123. Patient 6 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

124. Patient 6 was admitted to treatment for substance use detox and residential treatment on March 12, 2024. Patient 6 spent eight days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

125. Over the course of Patient 6's treatment, APN billed $138,850.00 for the cost of their treatment.

126. APN submitted the AOB signed by Patient 6, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

127. For half of the claims, Anthem and Blue Cross and Blue Shield of Oklahoma paid APN directly, and for the other half, Anthem and Blue Cross and Blue Shield of Oklahoma paid Patient 6, in violation of the AOB and Colorado law.

128. Anthem and Blue Cross and Blue Shield of Oklahoma never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

129. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 6's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

130. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 6, have suffered both financial injury and loss of access to medically necessary treatment resources.

131. Rather than pay the full amount at issue, Anthem only paid $24,034.31 for Patient 6's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

24

132. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $114,815.69 less than it should have for Patient 6's treatment.

133. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 6's treatment.

**Patient 7**

134. Patient 7 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Montana, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Montana for purposes of claims processing in the State of Colorado.

135. Patient 7 was a resident of Montana at all relevant times, and sought treatment while in Colorado.

136. Patient 7 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

137. Patient 7 was admitted to treatment for substance use detox and residential treatment on February 19, 2024. Patient 7 spent three days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

138. Over the course of Patient 7's treatment, APN billed $137,350.00 for the cost of their treatment.

139. APN submitted the AOB signed by Patient 7, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

140. With respect to several of the claims for this treatment, Anthem paid APN directly. However, for the vast majority, Anthem instead remitted payment to Patient 7 directly, in violation of the AOB and Colorado law.

141. Anthem and Blue Cross and Blue Shield of Montana never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

142. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 7's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

143. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 7, have suffered both financial injury and loss of access to medically necessary treatment resources.

144. Rather than pay the full amount at issue, Anthem paid just $5,995.88 for Patient 7's treatment. As a result of Anthem's underpayment, APN was paid less than its cost to provide the treatment at issue.

145. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $130,354.12 less than it should have for Patient 7's treatment.

**Patient 8**

146. Patient 8 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Oklahoma, with claims processed through Anthem in this

instance as the local affiliate and agent of Blue Cross and Blue Shield of Oklahoma for purposes of claims processing in the State of Colorado.

147. Patient 8 was a Colorado resident at all relevant times.

148. Patient 8 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

149. Patient 8 was admitted to treatment for substance use detox and residential treatment on February 10, 2024. Patient 8 spent six days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

150. Over the course of Patient 8's treatment, APN billed $169,315.00 for the cost of their treatment.

151. APN submitted the AOB signed by Patient 8, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

152. In this instance, Anthem respected the AOBs and remitted payment directly to APN.

153. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Blue Cross Blue Shield of Oklahoma paid Patient 8's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

154. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 8, have suffered both financial injury and loss of access to medically necessary treatment resources.

27

155. Rather than pay the full amount at issue, Anthem and Blue Cross Blue Shield of Oklahoma paid just $47,913.26 for Patient 8's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

156. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $121,401.74 less than it should have for Patient 8's treatment.

157. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and Blue Cross Blue Shield of Oklahoma would have paid substantially more for Patient 8's treatment.

**Patient 9**

158. Patient 9 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

159. Patient 9 was a Colorado resident at all relevant times.

160. Patient 9 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

161. Patient 9 was admitted to treatment for substance use detox and residential treatment on June 29, 2024. Patient 9 spent three days at Aurora Detox, with the remainder of their treatment provided at the APN Lodge.

162. Over the course of Patient 9's treatment, APN billed $145,340.00 for the cost of their treatment.

163. APN submitted the AOB signed by Patient 9, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

164. In this instance, Anthem respected the AOBs and remitted payment directly to APN.

165. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

166. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 9's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

167. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 9, have suffered both financial injury and loss of access to medically necessary treatment resources.

168. Rather than pay the full amount at issue, Anthem paid just $28,476.89 for Patient 9's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

169. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $116,863.11 less than it should have for Patient 9's treatment.

170. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 9's treatment.

**Patient 10**

171. Patient 10 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

172. Patient 10 was a Colorado resident at all relevant times.

173. Patient 10 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

174. Patient 10 was admitted to the APN Lodge for residential treatment on October 3, 2023.

175. Over the course of Patient 10's treatment, APN billed $103,385.00 for the cost of their treatment.

176. APN submitted the AOB signed by Patient 10, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

177. In this instance, Anthem respected the AOBs and remitted payment directly to APN.

178. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

179. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 10's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

180. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 10, have suffered both financial injury and loss of access to medically necessary treatment resources.

181. Rather than pay the full amount at issue, Anthem paid just $22,324.06 for Patient 10's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

182. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem paid $81,060.94 less than it should have for Patient 10's treatment.

183. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Patient 10's treatment.

**Patient 11**

184. Patient 11 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

185. Patient 11 was a Colorado resident at all relevant times.

186. Patient 11 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

187. Patient 11 was admitted to treatment for substance use detox and residential treatment on October 18, 2024. Patient 11 spent three days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

188. Over the course of Patient 11's treatment, APN billed $95,895.00 for the cost of their treatment.

189. APN submitted the AOB signed by Patient 11, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

190. In this instance, Anthem respected the AOBs and remitted payment directly to APN.

191. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

192. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 11's claims at substantially reduced amounts compared

both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

193. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 11, have suffered both financial injury and loss of access to medically necessary treatment resources.

194. Rather than pay the full amount at issue, Anthem paid just $10,378.39 for Patient 11's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

195. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $85,516.61 less than it should have for Patient 11's treatment.

196. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem would have paid substantially more for Patient 11's treatment.

**Kaden T. Keto (Patient 12)**

197. Kaden T. Keto ("Kaden"), formerly known as Patient 12, was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Montana ("BCBSMT"), with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Montana for purposes of claims processing in the State of Colorado.

198. Kaden was a resident of Montana at all relevant times, and sought treatment while in Colorado.

199. Kaden validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

200. Kaden was admitted to treatment for substance use detox and/or residential treatment on February 19, 2024. Kaden spent three days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

201. Over the course of Kaden's treatment, APN billed $149,835.00 for the cost of their treatment.

202. APN submitted the AOB signed by Kaden, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

203. With respect to several of the claims for this treatment, Anthem and BCBSMT paid APN directly. However, for others, Anthem and BCBSMT instead remitted payment to Kaden directly, in violation of the AOB and Colorado law.

204. Anthem and BCBSMT never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

205. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and BCBSMT paid Kaden's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

206. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Kaden, have suffered both financial injury and loss of access to medically necessary treatment resources.

207. Rather than pay the full amount at issue, Anthem and BCBSMT paid just $8,997.64 for Kaden's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

208. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and BCBSMT paid $140,837.36 less than they should have for Kaden's treatment.

209. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and BCBSMT would have paid substantially more for Kaden's treatment.

**Patient 13**

210. Patient 13 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Illinois, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Illinois for purposes of claims processing in the State of Colorado.

211. Patient 13 was a Colorado resident at all relevant times.

212. Patient 13 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

213. Patient 13 was admitted to treatment for substance use detox and residential treatment on October 1, 2024. Patient 13 spent three days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

214. Over the course of Patient 13's treatment, APN billed $122,865.00 for the cost of their treatment.

215. APN submitted the AOB signed by Patient 13, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

34

216. In this instance, Anthem and Blue Cross and Blue Shield of Illinois largely respected the AOBs and remitted payment directly to APN.

217. Anthem and Blue Cross and Blue Shield of Illinois never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

218. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Blue Cross and Blue Shield of Illinois paid Patient 13's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

219. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 13, have suffered both financial injury and loss of access to medically necessary treatment resources.

220. Rather than pay the full amount at issue, Anthem and Blue Cross and Blue Shield of Illinois paid just $7,102.73 for Patient 13's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

221. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Blue Cross and Blue Shield of Illinois paid $115,762.27 less than it should have for Patient 13's treatment.

222. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and Blue Cross and Blue Shield of Illinois would have paid substantially more for Patient 13's treatment.

35

**Patient 14**

223. Patient 14 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Illinois, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Illinois for purposes of claims processing in the State of Colorado.

224. Patient 14 was a Colorado resident at all relevant times.

225. Patient 14 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

226. Patient 14 was admitted to the APN Lodge for residential treatment on January 31, 2024.

227. Over the course of Patient 14's treatment, APN billed $220,255.00 for the cost of their treatment.

228. APN submitted the AOB signed by Patient 14, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

229. In this instance, Anthem and Blue Cross and Blue Shield of Illinois respected the AOBs and remitted payment directly to APN for all but one of the claims, for which payment was remitted directly to Patient 14 in violation of the AOB and Colorado law.

230. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Blue Cross and Blue Shield of Illinois paid Patient 14's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

231. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

36

treating analogous medical and surgical conditions, the Plaintiffs, including Patient 14, have suffered both financial injury and loss of access to medically necessary treatment resources.

232. Rather than pay the full amount at issue, Anthem and Blue Cross and Blue Shield of Illinois paid just $15,152.79 for Patient 14's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

233. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and Blue Cross and Blue Shield of Illinois paid $205,102.21 less than it should have for Patient 14's treatment.

234. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and Blue Cross and Blue Shield of Illinois would have paid substantially more for Patient 14's treatment.

**Patient 15**

235. Patient 15 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

236. Patient 15 was a Colorado resident at all relevant times.

237. Patient 15 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

238. Patient 15 was admitted to the APN Lodge for residential treatment on December 21, 2023.

239. Over the course of Patient 15's treatment, APN billed $53,940.00 for the cost of their treatment.

240. APN submitted the AOB signed by Patient 15, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

241. In this instance, Anthem respected the AOBs and remitted payment directly to APN.

242. Anthem never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

243. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 15's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

244. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 15, have suffered both financial injury and loss of access to medically necessary treatment resources.

245. Rather than pay the full amount at issue, Anthem paid just $3,006.67 for Patient 15's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

246. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem paid $50,933.33 less than it should have for Patient 15's treatment.

247. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Patient 15's treatment.

**Patient 16**

248. Patient 16 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem Blue Cross Blue Shield, with claims processed through Anthem in this instance

as the local affiliate and agent of Anthem Blue Cross Blue Shield for purposes of claims processing in the State of Colorado.

249. Patient 16 was a Colorado resident at all relevant times.

250. Patient 16 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

251. Patient 16 was admitted to treatment for substance use detox and residential treatment on December 3, 2024. Patient 16 spent two days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

252. Over the course of Patient 16's treatment, APN has billed $144,840.00 for the cost of their treatment.

253. APN submitted the AOB signed by Patient 16, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

254. In this instance, Anthem and Anthem Blue Cross Blue Shield respected the AOBs and remitted payment directly to APN.

255. Anthem and Anthem Blue Cross Blue Shield never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

256. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Anthem Blue Cross Blue Shield paid Patient 16's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

257. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

39

treating analogous medical and surgical conditions, the Plaintiffs, including Patient 16, have suffered both financial injury and loss of access to medically necessary treatment resources.

258. Rather than pay the full amount at issue, Anthem and Anthem Blue Cross Blue Shield paid just $34,463.54 for Patient 16's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

259. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Anthem Blue Cross Blue Shield paid $110,376.46 less than it should have for Patient 16's treatment.

260. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and Anthem Blue Cross Blue Shield would have paid substantially more for Patient 16's treatment.

**Patient 17**

261. Patient 17 was a participant or beneficiary of a fully-insured plan insured and administered by Anthem Blue Cross and Blue Shield Missouri, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross and Blue Shield Missouri for purposes of claims processing in the State of Colorado.

262. Patient 17 was a Colorado resident at all relevant times.

263. Patient 17 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

264. Patient 17 was admitted to treatment for substance use detox and residential treatment on January 21, 2025. Patient 17 spent five days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

265. Over the course of Patient 17's treatment, APN has billed $150,835.00 for the cost of their treatment.

266. APN submitted the AOB signed by Patient 17, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

267. In this instance, Anthem and Anthem Blue Cross and Blue Shield Missouri respected the AOBs and remitted payment directly to APN.

268. Anthem and Blue Cross and Blue Shield Missouri never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

269. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 17's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

270. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 17, have suffered both financial injury and loss of access to medically necessary treatment resources.

271. Rather than pay the full amount at issue, Anthem and Anthem Blue Cross and Blue Shield Missouri paid just $43,466.00 for Patient 17's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

272. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Anthem Blue Cross

and Blue Shield Missouri paid $107,369.00 less than it should have for Patient 17's treatment.

273. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and Anthem Blue Cross and Blue Shield Missouri would have paid substantially more for Patient 17's treatment.

**Patient 18**

274. Patient 18 was a participant or beneficiary of a fully-insured plan insured and administered by Blue Shield of California, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Shield of California for purposes of claims processing in the State of Colorado.

275. Patient 18 was a Colorado resident at all relevant times.

276. Patient 18 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

277. Patient 18 was admitted to the APN Lodge for residential treatment on February 19, 2024.

278. Over the course of Patient 18's treatment, APN billed $139,345.00 for the cost of their treatment.

279. APN submitted the AOB signed by Patient 18, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

280. In this instance, Anthem and Blue Shield of California respected the AOBs and remitted payment directly to APN.

281. Anthem and Blue Shield of California never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

282. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 18's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

283. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 18, have suffered both financial injury and loss of access to medically necessary treatment resources.

284. Rather than pay the full amount at issue, Anthem and Blue Shield of California paid just $27,615.70 for Patient 18's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

285. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and Blue Shield of California paid $111,729.30 less than it should have for Patient 18's treatment.

286. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and Blue Shield of California would have paid substantially more for Patient 18's treatment.

**Patient 19**

287. Patient 19 was a participant or beneficiary of the self-funded Luther Holding Company Health Welfare Plan, administered by Blue Cross and Blue Shield of Minnesota and with claims originating in Colorado processed by and through Anthem.

288. Patient 19 was a Minnesota resident at all relevant times.

289. Patient 19 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

290. Patient 19 was admitted to the APN Lodge for residential treatment on January 2, 2023.

291. Over the course of Patient 19's treatment, APN billed $85,405.00 for the cost of their treatment.

292. APN submitted the AOB signed by Patient 19, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

293. In this instance, Anthem, the claims administrator, and the Plan[6] largely respected the AOBs and remitted payment directly to APN for sixteen of the claims, although for three claims Anthem and the Plan remitted payment directly to Patient 19, in violation of the AOBs and Colorado law.

294. Anthem and the Plan never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

295. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 19's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or in network providers of analogous medical and surgical care.

296. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 19,

---

[6] Any reference to the "Plan" with respect to each of the Patients listed in this Complaint will refer to the relevant self-funded plan entity identified in relation to each particular Patient.

have suffered both financial injury and loss of access to medically necessary treatment resources.

297. Rather than pay the full amount at issue, Anthem and the Plan paid just $31,371.19 for Patient 19's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

298. If the APN Lodge was network, Anthem and the Plan would have paid substantially more for Patient 19's treatment. As outlined in the Luther Holding Company Health Welfare Plan benefits booklet, analogous network services in a skilled nursing facility are paid at a much higher rate, with the plan paying the entirety of the allowed amount after the deductible has been met. On the other hand, out-of-network treatment at a residential treatment center requires patients to pay 20% coinsurance even after meeting their deductible, and the Plan indicates that patients are responsible for payment of any billed charges above an undisclosed "allowed amount."

299. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem paid $48,033.81 less than it should have for Patient 19's treatment.

**Patient 20**

300. Patient 20 was a participant or beneficiary of the self-funded Baker Tilly Group Insurance Plan, administered by Blue Cross Blue Shield of Illinois, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross Blue Shield of Illinois for purposes of claims processing in the state of Colorado.

301. Patient 20 was a Colorado resident at all relevant times.

302. Patient 20 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

45

303. Patient 20 was admitted to the APN Lodge for residential treatment on October 22, 2024.

304. Over the course of Patient 20's treatment, APN billed $125,860.00 for the cost of their treatment.

305. APN submitted the AOB signed by Patient 20, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

306. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

307. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

308. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 20's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

309. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 20, have suffered both financial injury and loss of access to medically necessary treatment resources.

310. Rather than pay the full amount at issue, Anthem and the Plan paid just $13,309.98 for Patient 20's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

311. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $112,550.62 less than they should have for Patient 20's treatment.

312. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 20's treatment.

**Patient 21**

313. Patient 21 was a participant or beneficiary of a self-funded plan with the Group Number 031179, believed to be the "Associate of State Farm Group Medical PPO Plan Insured by SFMAIC," administered by Blue Cross and Blue Shield of Illinois with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Illinois for purposes of claims processing in the State of Colorado.

314. Patient 21 was a Colorado resident at all relevant times.

315. Patient 21 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

316. Patient 21 was admitted to treatment for substance use detox and residential treatment on October 17, 2024. Patient 21 spent four days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

317. Over the course of Patient 21's treatment, APN billed $87,405.00 for the cost of their treatment.

318. APN submitted the AOB signed by Patient 21, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

319. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

320. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

321. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 21's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

322. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 21, have suffered both financial injury and loss of access to medically necessary treatment resources.

323. Rather than pay the full amount at issue, Anthem and the Plan paid just $7,875.00 for Patient 21's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

324. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $79,530.00 less than they should have for Patient 21's treatment.

325. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 21's treatment.

**Kymbelie Bennett (Patient 22)**

326. Kymbelie Bennett ("Kymbelie"), formerly known as Patient 22, was a participant or beneficiary of the self-funded Amazon and Subsidiaries Shared Deductible Plan,

48

administered by Premera Blue Cross of Seattle, Washington, with claims processed through

Anthem in this instance as the local affiliate and agent of Premera Blue Cross of Seattle,

Washington, for purposes of claims processing in the State of Colorado.

327. Kymbelie was a Nebraska resident at all relevant times.

328. Kymbelie validly assigned their ERISA rights in and to the benefits at issue, as well as their

rights to pursue litigation under 29 U.S.C. §1132, to APN.

329. Kymbelie was admitted to treatment for substance use detox and residential treatment on

July 19, 2023. Kymbelie spent three days at Aurora Detox, with the remainder of their

treatment occurring at the APN Lodge.

330. Over the course of Kymbelie's treatment, APN billed $270,195.00 for the cost of their

treatment.

331. APN submitted the AOB signed by Kymbelie, as well as the UB-04 claim forms indicating

benefits were assigned, to Anthem for processing.

332. With respect to several of the claims for this treatment, Anthem, Blue Cross, and Premera

Blue Cross of Seattle, Washington, and the applicable ERISA Plan paid APN directly.

However, for others, Anthem, the Plan, and Premera Blue Cross of Seattle, Washington,

instead remitted payment to Kymbelie directly, in violation of the AOB and Colorado law.

333. Anthem, Premera Blue Cross of Seattle, Washington, and the Plan never communicated

any refusal to honor the AOB and never asserted that it was invalid before litigation.

334. Because APN is a non-network provider of mental health and substance use disorder

treatment, Anthem and the Plan paid Kymbelie's claims at substantially reduced amounts

compared both to the billed charges and the rates Anthem pays its network providers of

residential treatment or network providers of analogous medical and surgical care.

335. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Kymbelie, have suffered both financial injury and loss of access to medically necessary treatment resources.

336. Rather than pay the full amount at issue, Anthem and the Plan paid just $8,091.60 for Kymbelie's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

337. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $262,103.40 less than they should have for Kymbelie's treatment.

338. If the APN Lodge and Aurora Detox were network, Anthem and the Plan would have paid substantially more for Kymbelie's treatment. As outlined in the Amazon and Subsidiaries Shared Deductible Plan, analogous network services in a skilled nursing facility or inpatient rehabilitation facility are paid at a much higher rate, with the Plan paying 90% of the cost of treatment after the participant reaches their deductible. On the other hand, out-of-network treatment at a residential treatment center requires patients to pay 30% coinsurance even after meeting their deductible, with the Plan never paying more than 70% of the cost of treatment.

**Patient 23**

339. Patient 23 was a participant or beneficiary of a self-funded Florida Blue BlueOptions PPO Plan with Group Number 99999ZT1, administered by Florida Blue with claims processed

through Anthem in this instance as the local affiliate and agent of Florida Blue for purposes of claims processing in the State of Colorado..

340. Patient 23 was a Florida resident at all relevant times.

341. Patient 23 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

342. Patient 23 was admitted to the APN Lodge for residential treatment on July 1, 2022.

343. Over the course of Patient 23's treatment, APN billed $184,295.00 for the cost of their treatment.

344. APN submitted the AOB signed by Patient 23, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

345. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

346. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

347. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 23's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

348. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 23, have suffered both financial injury and loss of access to medically necessary treatment resources.

349. Rather than pay the full amount at issue, Anthem and the Plan paid just $58,643.44 for Patient 23's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

350. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $161,790.78 less than they should have for Patient 23's treatment.

351. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 23's treatment.

**Patient 24**

352. Patient 24 was a participant or beneficiary of the self-funded Wells Fargo & Company Health Plan, administered by Anthem Blue Cross and Blue Shield Indiana, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross and Blue Shield Indiana for purposes of claims processing in the State of Colorado.

353. Patient 24 was a Colorado resident at all relevant times.

354. Patient 24 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

355. Patient 24 was admitted to treatment for substance use detox and residential treatment on March 6, 2023. Patient 24 spent four days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

356. Over the course of Patient 24's treatment, APN billed $215,765.00 for the cost of their treatment.

357. APN submitted the AOB signed by Patient 24, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

358. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

359. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

360. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 24's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

361. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 24, have suffered both financial injury and loss of access to medically necessary treatment resources.

362. Rather than pay the full amount at issue, Anthem and the Plan paid just $53,947.22 for Patient 24's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

363. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $161,790.78 less than they should have for Patient 24's treatment.

364. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 24's treatment.

**Patient 25**

365. Patient 25 was a participant or beneficiary of the self-funded Tulane University Welfare Benefits Plan, administered by Blue Cross and Blue Shield of South Carolina, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of South Carolina for purposes of claims processing in the State of Colorado.

366. Patient 25 was a Louisiana resident at all relevant times.

367. Patient 25 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

368. Patient 25 was admitted to treatment for substance use detox and residential treatment on March 15, 2024. Patient 25 spent four days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

369. Over the course of Patient 25's treatment, APN billed $217,760.00 for the cost of their treatment.

370. APN submitted the AOB signed by Patient 25, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

371. In this instance, Anthem, the claims administrator, and the Plan largely respected the AOBs and remitted payment directly to APN, although in several instances Anthem remitted payment directly to Patient 25 in violation of the AOBs and Colorado law.

372. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

373. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 25's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

374. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 25, have suffered both financial injury and loss of access to medically necessary treatment resources.

375. Rather than pay the full amount at issue, Anthem and the Plan paid just $83,176.68 for Patient 25's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

376. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $134,583.32 less than they should have for Patient 25's treatment.

377. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 25's treatment.

**Noah Ferrell**

378. Noah Ferrell ("Noah"), formerly known as Patient 26, was a participant or beneficiary of the self-funded Wegmans Employee Welfare Benefits Plan, administered by Blue Cross and Blue Shield of South Carolina ("BCBSSC"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSSC for purposes of claims processing in the State of Colorado.

379. Noah was a Virgina resident at all relevant times.

380. Noah validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

381. Noah was admitted to the APN Lodge for residential treatment on March 16, 2023.

382. Over the course of Noah's treatment, APN billed $193,285.00 for the cost of the treatment.

383. APN submitted the AOB signed by Noah, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

384. With respect to several of the claims for this treatment, Anthem, BCBSSC, and the applicable ERISA Plan paid APN directly. However, for others, Anthem, the Plan, and BCBSSC instead remitted payment to Noah directly, in violation of the AOB and Colorado law.

385. Anthem, BCBSSC, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

386. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Noah's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

387. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Noah, have suffered both financial injury and loss of access to medically necessary treatment resources.

388. Rather than pay the full amount at issue, Anthem and the Plan paid just $57,368.09 for Noah's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

389. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $135,916.91 less than they should have for Noah's treatment.

390. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 26's treatment.

**Patient 27**

391. Patient 27 was a participant or beneficiary of a self-funded Value HDHP Plan with Group Number JQH031M001, believed to be the EMP Management Group, Ltd. Health Benefits Plan, administered by Anthem Blue Cross and Blue Shield Ohio, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross and Blue Shield Ohio for purposes of claims processing in the State of Colorado.

392. Patient 27 was a Colorado resident at all relevant times.

393. Patient 27 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

394. Patient 27 was admitted to the APN Lodge for residential treatment on October 10, 2024.

395. Over the course of Patient 27's treatment, APN billed $157,325.00 for the cost of their treatment.

396. APN submitted the AOB signed by Patient 27, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

397. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

398. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

57

399. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 27's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

400. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 27, have suffered both financial injury and loss of access to medically necessary treatment resources.

401. Rather than pay the full amount at issue, Anthem and the Plan paid just $42,900.00 for Patient 27's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

402. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $114,425.00 less than they should have for Patient 27's treatment.

403. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 27's treatment.

**Patient 28**

404. Patient 28 has been removed from this case, as the Plaintiffs determined that these claims are likely untimely if asserted by the APN Plaintiffs, and Plaintiffs include this as a placeholder to improve continuity and readability in light of the original complaint.

**Patient 29**

405. Patient 29 was a participant or beneficiary of a self-funded PPO Plan with Group Number 270238M2AG, administered by Anthem Blue Cross and Blue Shield Indiana, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross and Blue Shield Indiana for purposes of claims processing in the State of Colorado.

406. Patient 29 was a Minnesota resident at all relevant times.

407. Patient 29 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

408. Patient 29 was admitted to the APN Lodge for residential treatment on September 9, 2023.

409. Over the course of Patient 29's treatment, APN billed $125,860.00 for the cost of their treatment.

410. APN submitted the AOB signed by Patient 29, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

411. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

412. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

413. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 29's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

414. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 29,

have suffered both financial injury and loss of access to medically necessary treatment resources.

415. Rather than pay the full amount at issue, Anthem and the Plan paid just $27,000.00 for Patient 29's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

416. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $98,860.00 less than they should have for Patient 29's treatment.

417. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 29's treatment.

**Patient 30**

418. Patient 30 was a participant or beneficiary of the self-funded PACCAR Welfare Benefits Plan, administered by Premera Blue Cross, with claims processed through Anthem in this instance as the local affiliate and agent of Premera Blue Cross for purposes of claims processing in the State of Colorado.

419. Patient 30 was a Colorado resident at all relevant times.

420. Patient 30 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

421. Patient 30 was admitted to the APN Lodge for residential treatment on May 25, 2023.

422. Over the course of Patient 30's treatment, APN billed $94,395.00 the cost of their treatment.

423. APN submitted the AOB signed by Patient 30, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

424. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN with respect to roughly half of the claims. For the remaining claims, Anthem and the Plan remitted payment directly to Patient 30 in violation of the AOBs and Colorado law.

425. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

426. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 30's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

427. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 30, have suffered both financial injury and loss of access to medically necessary treatment resources.

428. Rather than pay the full amount at issue, Anthem and the Plan paid just $13,046.25 for Patient 30's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

429. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $81,348.75 less than they should have for Patient 30's treatment.

430. If the APN Lodge was network, Anthem and the Plan would have paid substantially more for Patient 30's treatment. As outlined in the PACCAR Welfare Benefits Plan, analogous

network services are covered with the Plan paying 80% of the allowed amount, while the

Plan pays for only 60% of the allowed amount for out-of-network services and burdens

participants with paying any billed amounts exceeding the allowed amount.

**Patient 31**

431. Patient 31 was a participant or beneficiary of the self-funded Capital One Financial

Corporation Employee Welfare Plan, administered by Anthem Blue Cross and Blue Shield

Virginia, with claims processed through Anthem in this instance as the local affiliate and

agent of Anthem Blue Cross and Blue Shield Virginia for purposes of claims processing in

the State of Colorado.

432. Patient 31 was a Colorado resident at all relevant times.

433. Patient 31 validly assigned their ERISA rights in and to the benefits at issue, as well as

their rights to pursue litigation under 29 U.S.C. §1132, to APN.

434. Patient 31 was admitted to the APN Lodge for residential treatment on October 31, 2022.

435. Over the course of Patient 31's treatment, APN billed $139,345.00 for the cost of their

treatment.

436. APN submitted the AOB signed by Patient 31, as well as the UB-04 claim forms indicating

benefits were assigned, to Anthem for processing.

437. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and

remitted payment directly to APN.

438. Anthem and the Plan never communicated any refusal to honor the AOB and never

asserted that it was invalid before litigation.

439. Because APN is a non-network provider of mental health and substance use disorder

treatment, Anthem paid Patient 31's claims at substantially reduced amounts compared

62

both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

440. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 31, have suffered both financial injury and loss of access to medically necessary treatment resources.

441. Rather than pay the full amount at issue, Anthem paid just $30,293.36 for Patient 31's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

442. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $109,051.64 less than they should have for Patient 31's treatment.

443. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 31's treatment.

**Patient 32**

444. Patient 32 was a participant or beneficiary of the self-funded Avago Technologies Employee Benefits Plan, administered by Blue Shield of California, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Shield of California for purposes of claims processing in the State of Colorado.

445. Patient 32 was a Colorado resident at all relevant times.

446. Patient 32 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

447. Patient 32 was admitted to the APN Lodge for residential treatment on February 20, 2023.

448. Over the course of Patient 32's treatment, APN billed $76,415.00 for the cost of their treatment.

449. APN submitted the AOB signed by Patient 32, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

450. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

451. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

452. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 32's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

453. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 32, have suffered both financial injury and loss of access to medically necessary treatment resources.

454. Rather than pay the full amount at issue, Anthem and the Plan paid just $17,471.19 for Patient 32's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

455. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $58,943.81 less than they should have for Patient 32's treatment.

456. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 32's treatment.

**Patient 33**

457. Patient 33 was a participant or beneficiary of the self-funded DaVita Health and Welfare Plan, administered by Anthem.

458. Patient 33 was a Colorado resident at all relevant times.

459. Patient 33 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

460. Patient 33 was admitted to treatment for substance use detox and residential treatment on May 6, 2024. Patient 33 spent two days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

461. Over the course of Patient 33's treatment, APN billed $144,840.00 for the cost of their treatment.

462. APN submitted the AOB signed by Patient 33, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

463. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

464. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

465. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 33's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

466. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 33, have suffered both financial injury and loss of access to medically necessary treatment resources.

467. Rather than pay the full amount at issue, Anthem and the Plan paid just $36,231.68 for Patient 33's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

468. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $108,608.32 less than they should have for Patient 33's treatment.

469. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 33's treatment.

**Patient 34**

470. Patient 34 was a participant or beneficiary of a PPO Plan with Group Number 4014483, administered by Premera Blue Cross, with claims processed through Anthem in this

instance as the local affiliate and agent of Premera Blue Cross for purposes of claims processing in the State of Colorado.[7]

471. Patient 34 was a Washington resident at all relevant times.

472. Patient 34 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

473. Patient 34 was admitted to the APN Lodge for residential treatment on April 25, 2023.

474. Over the course of Patient 34's treatment, APN billed $40,455.00 for the cost of their treatment.

475. APN submitted the AOB signed by Patient 34, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

476. In this instance, Anthem, the claims administrator, and the Plan largely respected the AOBs and remitted payment directly to APN, although payment for several claims was remitted directly to Patient 34 in violation of the AOBs and Colorado law.

477. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

478. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 34's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

479. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

---

[7] At present, it is unclear to Plaintiffs whether Patient 34 participates in a self-funded or fully-insured benefit plan.

treating analogous medical and surgical conditions, the Plaintiffs, including Patient 34, have suffered both financial injury and loss of access to medically necessary treatment resources.

480. Rather than pay the full amount at issue, Anthem and the Plan paid just $6,049.72 for Patient 34's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

481. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem paid $34,405.28 less than it should have for Patient 34's treatment.

482. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and either Premera Blue Cross or the applicable self-funded Plan would have paid substantially more for Patient 34's treatment.

**Patient 35**

483. Patient 35 was a participant or beneficiary of the self-funded DOMTAR US Salaried Plan, administered by Blue Cross and Blue Shield of South Carolina, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of South Carolina for purposes of claims processing in the State of Colorado.

484. Patient 35 was a Wisconsin resident at all relevant times.

485. Patient 35 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

486. Patient 35 was admitted to the APN Lodge for residential treatment on January 29, 2024.

487. Over the course of Patient 35's treatment, APN billed $139,345.00 for the cost of their treatment.

488. APN submitted the AOB signed by Patient 35, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

489. In this instance, Anthem, the claims administrator, and the Plan largely respected the AOBs and remitted payment directly to APN, but in several instances remitted payment directly to Patient 35 in violation of the AOBs and Colorado law.

490. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

491. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 35's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

492. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 35, have suffered both financial injury and loss of access to medically necessary treatment resources.

493. Rather than pay the full amount at issue, Anthem and the Plan paid just $39,019.95 for Patient 35's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

494. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem and the Plan paid $100,325.05 less than they should have for Patient 35's treatment.

495. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 35's treatment.

**Patient 36**

496. Patient 36 was a participant or beneficiary of a self-funded plan with Group Number 03-91700, administered by Horizon Blue Cross and Blue Shield of New Jersey, with claims processed through Anthem in this instance as the local affiliate and agent of Horizon Blue Cross and Blue Shield of New Jersey for purposes of claims processing in the State of Colorado.

497. Patient 36 was a New Jersey resident at all relevant times.

498. Patient 36 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

499. Patient 36 was admitted to treatment for substance use detox and residential treatment on April 16, 2024. Patient 36 spent two days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

500. Over the course of Patient 36's treatment, APN billed $135,850.00 for the cost of their treatment.

501. APN submitted the AOB signed by Patient 36, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

502. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN for only a few of the claims. Anthem and the Plan remitted payment for the majority of the claims directly to Patient 36, in violation of the AOBs and Colorado law.

70

503. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

504. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 36's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

505. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 36, have suffered both financial injury and loss of access to medically necessary treatment resources.

506. Rather than pay the full amount at issue, Anthem and the Plan paid just $46,934.88 for Patient 36's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

507. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $88,915.12 less than they should have for Patient 36's treatment.

508. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 36's treatment.

**Patient 37**

509. Patient 37 was a participant or beneficiary of a self-funded PPO Plan with Group Number 1901681 -MD10, administered by CareFirst BlueCross BlueShield, with claims processed

71

through Anthem in this instance as the local affiliate and agent of CareFirst BlueCross BlueShield for purposes of claims processing in the State of Colorado.

510. Patient 37 was a North Carolina resident at all relevant times.

511. Patient 37 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

512. Patient 37 was admitted to treatment for substance use detox and residential treatment on February 17, 2023. Patient 37 spent six days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

513. Over the course of Patient 37's treatment, APN billed $160,325.00 for the cost of their treatment.

514. APN submitted the AOB signed by Patient 37, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

515. In this instance, Anthem, the claims administrator, and the Plan largely respected the AOBs and remitted payment directly to APN, although in several instances they remitted payment directly to Patient 37 in violation of the AOBs and Colorado law.

516. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

517. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 37's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

518. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

treating analogous medical and surgical conditions, the Plaintiffs, including Patient 37, have suffered both financial injury and loss of access to medically necessary treatment resources.

519. Rather than pay the full amount at issue, Anthem and the Plan paid just $40,874.90 for Patient 37's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

520. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $119,450.10 less than it should have for Patient 37's treatment.

521. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 37's treatment.

**Patient 38**

522. Patient 38 was a participant or beneficiary of the self-funded Contractors Health Trust plan, administered by Anthem.

523. Patient 38 was a Colorado resident at all relevant times.

524. Patient 38 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

525. Patient 38 was admitted to treatment for substance use detox and residential treatment on September 1, 2024. Patient 38 spent four days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

526. Over the course of Patient 38's treatment, APN billed $82,910.00 for the cost of their treatment.

73

527. APN submitted the AOB signed by Patient 38, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

528. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

529. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

530. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 38's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

531. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 38, have suffered both financial injury and loss of access to medically necessary treatment resources.

532. Rather than pay the full amount at issue, Anthem and the Plan paid just $19,478.47 for Patient 38's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

533. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $63,431.53 less than it should have for Patient 38's treatment.

534. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 32's treatment.

### Patient 39

535. After further evaluation of Patient 39's claims, the APN Plaintiffs were able to determine that Patient 39's claims were included in error. This paragraph remains only to improve continuity and readability alongside the original complaint.

### Patient 40

536. Patient 40 was a participant or beneficiary of a self-funded PPO Plan with Plan Code 371 and a presently-unidentified Group Number, administered by Blue Cross and Blue Shield of Wyoming, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Wyoming for purposes of claims processing in the State of Colorado.

537. Patient 40 was a Colorado resident at all relevant times.

538. Patient 40 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

539. Patient 40 was admitted to the APN Lodge for residential treatment on April 25, 2025.

540. Over the course of Patient 40's treatment, APN billed $62,930.00 for the cost of their treatment.

541. APN submitted the AOB signed by Patient 40, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

542. In this instance, Anthem, the claims administrator, and the Plan have failed to issue payment for all but one of the claims.

543. The one claim that has been processed by Anthem was designated as "paid" and remitted directly to Patient 40, in violation of the AOBs and Colorado law, although the claim was paid in the amount of $0.00.

544. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

545. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 40's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

546. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 40, have suffered both financial injury and loss of access to medically necessary treatment resources.

547. Rather than pay the full amount at issue, Anthem and the Plan paid nothing for Patient 40's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

548. As a result of Anthem's insufficient network of residential treatment providers on the Western Slope, Anthem paid nothing, when it and the Plan should have paid for Patient 40's treatment.

549. Upon information and belief, if the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 40's treatment.

**Patient 41**

76

550. Patient 41 was a participant or beneficiary of a self-funded PPO Plan with a presently-unidentified Group Number, administered by Blue Cross and Blue Shield of Massachusetts, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Massachusetts for purposes of claims processing in the State of Colorado.

551. Patient 41 was a Colorado resident at all relevant times.

552. Patient 41 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

553. Patient 41 was admitted to treatment for substance use detox and residential treatment on December 4, 2023. Patient 41 spent thirteen days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

554. Over the course of Patient 41's treatment, APN billed $199,785.00 for the cost of their treatment.

555. APN submitted the AOB signed by Patient 41, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

556. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment directly to APN.

557. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

558. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 41's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

559. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 41, have suffered both financial injury and loss of access to medically necessary treatment resources.

560. Rather than pay the full amount at issue, Anthem and the Plan paid just $89,762.21 for Patient 41's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

561. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $110,022.39 less than they should have for Patient 41's treatment.

562. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 41's treatment.

**Patient 42**

563. Patient 42 was a participant or beneficiary of the self-funded Microsoft Corporation Welfare Plan, administered by Premera Blue Cross with claims processed through Anthem in this instance as the local affiliate and agent of Premera Blue Cross for purposes of claims processing in the State of Colorado.

564. Patient 42 was a Colorado resident at all relevant times.

565. Patient 42 validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

566. Patient 42 was admitted to treatment for substance use detox and residential treatment on January 30, 2024. Patient 42 spent two days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

567. Over the course of Patient 42's treatment, APN billed $50,455.00 for the cost of their treatment.

568. APN submitted the AOB signed by Patient 42, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

569. In this instance, Anthem, the claims administrator, and the Plan respected the AOBs and remitted payment for the claims directly to APN, but the claims were designated as "paid" in the amount of $0.00.

570. Anthem and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

571. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Patient 42's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

572. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Patient 42, have suffered both financial injury and loss of access to medically necessary treatment resources.

573. Rather than pay the full amount at issue, Anthem and the Plan paid nothing for Patient 42's treatment. As a result of Anthem's underpayment, APN was paid less than the cost to provide the treatment at issue.

574. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid nothing, when they should have paid for Patient 42's treatment.

575. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and the Plan would have paid substantially more for Patient 42's treatment.

**Andrew Gurisko**

576. Andrew Gurisko ("Andrew") was a participant or beneficiary of a fully-insured plan insured and administered by Anthem Blue Cross and Blue Shield Connecticut, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross and Blue Shield Connecticut for purposes of claims processing in the State of Colorado.

577. Andrew was a resident of Connecticut at all relevant times, and sought treatment while in Colorado.

578. Andrew validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

579. Andrew was admitted to residential treatment at the APN Lodge on September 26, 2022.

580. Over the course of Andrew's treatment, APN billed $22,475.00 for the cost of their treatment.

581. APN submitted the AOB signed by Andrew, as well as the UB-04 claim forms indicating benefits were assigned to Anthem for processing.

582. In this instance, Anthem and Anthem Blue Cross Blue Shield Connecticut never honored the AOB or respected the assignment, and no benefits were received either by APN or Andrew.

583. Anthem and Anthem Blue Cross and Blue Shield Connecticut never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

584. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Andrew's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

585. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Andrew, have suffered both financial injury and loss of access to medically necessary treatment resources.

586. Rather than pay the full amount at issue, Anthem and Anthem Blue Cross Blue Shield Connecticut paid nothing for Andrew's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

587. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Anthem Blue Cross Blue Shield Connecticut paid $22,475.00 less than it should have for Andrew's treatment.

588. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and Anthem Blue Cross Blue Shield of Connecticut would have paid substantially more for Andrew's treatment.

**Anna Gochnour**

589. Anna Gochnour ("Anna") was a participant or beneficiary of the self-funded IAFF Health & Wellness Plan of the Northwest Fire Fighters Benefits Trust, administered by Regence Blue Shield, with claims processed through Anthem in this instance as the local affiliate and agent of Regence for purposes of claims processing in the State of Colorado.

590. Anna was a Washington resident at all relevant times.

591. Anna validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

592. Anna was admitted to residential treatment at the APN Lodge on September 18, 2023.

593. Over the course of Anna's treatment, APN billed $155,325.00 for the cost of their treatment.

594. APN submitted the AOB signed by Anna, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

595. In this instance, Anthem, the Plan, and Regence Blue Shield fully honored the AOB and respected the assignment, remitting payment directly to APN.

596. Anthem, Regence Blue Shield, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

597. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Anna's claims at substantially reduced amounts

compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

598. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Anna, have suffered both financial injury and loss of access to medically necessary treatment resources.

599. Rather than pay the full amount at issue, Anthem and the Plan paid just $76,793.88 for Anna's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

600. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $78,531.12 less than they should have for Anna's treatment.

601. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Anna's treatment.

**Brad Weiss**

602. Brad Weiss ("Brad") was a participant or beneficiary of a fully-insured plan insured and administered by CareFirst BlueCross BlueShield, with claims processed through Anthem in this instance as the local affiliate and agent of CareFirst BlueCross BlueShield for purposes of claims processing in the State of Colorado.

603. Brad was a resident of Hawaii at all relevant times, and sought treatment while in Colorado.

604. Brad validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

83

605. Brad was admitted to treatment Aurora Detox for treatment on July 8, 2022. Brad spent three days at Aurora Detox before transitioning to the APN Lodge, where he received residential and then partial hospitalization treatment.

606. Over the course of Brad's treatment, APN billed $298,160.00 for the cost of their treatment.

607. APN submitted the AOB signed by Brad, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

608. In this instance, Anthem and CareFirst BlueCross BlueShield fully honored the AOB and respected the assignment, remitting payment directly to APN.

609. Anthem and CareFirst BlueCross BlueShield never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

610. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Brad's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

611. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Brad, have suffered both financial injury and loss of access to medically necessary treatment resources.

612. Rather than pay the full amount at issue, Anthem paid just $55,542.75 for Brad's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

613. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $242,617.25 less than it should have for Brad's treatment.

614. Upon information and belief, if the APN Lodge and Aurora Detox were network with Anthem, Anthem and CareFirst BlueCross BlueShield would have paid substantially more for Brad's treatment.

**Briana Khan**

615. Briana Khan ("Briana") was a participant or beneficiary of the self-funded SNC-Lavalin Employee Benefits Plan, administered by Blue Cross and Blue Shield of Texas ("BCBSTX"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSTX for purposes of claims processing in the State of Colorado.

616. Briana was a Georgia resident at all relevant times.

617. Briana validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

618. Briana was admitted to the APN Lodge for partial hospitalization and residential treatment on July 1, 2022.

619. Over the course of Briana's treatment, APN billed $49,940.00 for the cost of their treatment.

620. APN submitted the AOB signed by Briana, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

621. In this instance, Anthem, BCBSTX, and the Plan never honored the AOB or respected the assignment, and no benefits were received either by APN or by Briana.

622. Anthem, BCBSTX, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

623. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Briana's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

624. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Briana, have suffered both financial injury and loss of access to medically necessary treatment resources.

625. Rather than pay the full amount at issue, Anthem and the Plan paid nothing for Briana's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

626. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $49,940.00 less than they should have for Briana's treatment.

627. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Briana's treatment.

**Caroline Masullo**

628. Caroline Masullo ("Caroline") was a participant or beneficiary of the self-funded Ahold USA Inc. Master Welfare Plan, administered by Capital Blue Cross, with claims processed through Anthem in this instance as the local affiliate and agent of Capital Blue Cross for purposes of claims processing in the State of Colorado.

629. Caroline was a Texas resident at all relevant times.

630. Caroline validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

631. Caroline was admitted to Aurora Detox for substance use detox on April 3, 2023. Caroline spent 6 days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

632. Over the course of Caroline's treatment, APN billed $146,840.00 for the cost of their treatment.

633. APN submitted the AOB signed by Caroline, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

634. With respect to several of the claims for this treatment, Anthem, the Capital Blue Cross, and the applicable ERISA Plan paid APN directly. However, for others, Anthem, the Plan, and Capital Blue Cross instead remitted payment to Caroline directly, in violation of the AOB and Colorado law.

635. Anthem, Capital Blue Cross, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

636. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Caroline's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

637. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

treating analogous medical and surgical conditions, the Plaintiffs, including Caroline, have suffered both financial injury and loss of access to medically necessary treatment resources.

638. Rather than pay the full amount at issue, Anthem and the Plan paid just $32,700.30 for Caroline's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

639. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $114,139.70 less than they should have for Caroline's treatment.

640. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Caroline's treatment.

**David Rechsteiner**

641. David Rechsteiner ("David") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Kansas City, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Kansas City for purposes of claims processing in the State of Colorado.

642. David was a resident of Kansas at all relevant times, and sought treatment while in Colorado.

643. David validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

644. David was admitted to Aurora Detox for treatment on August 31, 2022. David spent 5 days at Aurora Detox, after which he transitioned into residential treatment at the APN Lodge.

645. Over the course of David's treatment, APN billed $141,845.00 for the cost of their treatment.

646. APN submitted the AOB signed by David, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

647. In this instance, Anthem and Blue Cross and Blue Shield of Kansas City fully honored the AOB and respected the assignment, remitting payment directly to APN for the vast majority of the claims. However, several of the claims were denied.

648. Anthem and Blue Cross and Blue Shield of Kansas City never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

649. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid David's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

650. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including David, have suffered both financial injury and loss of access to medically necessary treatment resources.

651. Rather than pay the full amount at issue, Anthem and Blue Cross Blue Shield of Kansas City paid just $38,600 for David's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

652. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Blue Cross Blue Shield of Kansas City paid $103,245.00 less than they should have for David's treatment.

653. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for David's treatment.

89

**Daylon Martin**

654. Daylon Martin ("Daylon") was a participant or beneficiary of the self-funded State of Montana administered by Blue Cross and Blue Shield of Montana ("BCBSMT"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSMT for purposes of claims processing in the State of Colorado.

655. Daylon was a Montana resident at all relevant times.

656. Daylon validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

657. Daylon was admitted to treatment at Aurora Detox on February 28, 2023. Daylon spent three days at Aurora Detox before transitioning to the APN Lodge for residential treatment.

658. Over the course of Daylon's treatment, APN billed $140,845.00 for the cost of their treatment.

659. APN submitted the AOB signed by Daylon, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

660. With respect to several of the claims for this treatment, Anthem and BCBSMT paid APN directly. However, for most of the claims, Anthem and BCBSMT instead remitted payment to Daylon directly, in violation of the AOB and Colorado law.

661. Anthem and BCBSMT never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

662. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and BCBSMT paid Daylon's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

663. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Daylon, have suffered both financial injury and loss of access to medically necessary treatment resources.

664. Rather than pay the full amount at issue, Anthem and BCBSMT paid just $3,122.24 for Daylon's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

665. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and BCBSMT paid $137,722.76 less than they should have for Daylon's treatment.

666. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Daylon's treatment.

**Brandon Friedman**

667. Brandon Friedman was a participant or beneficiary of the self-funded Glenmede Corporation Welfare Benefit Plan, administered by Independence Blue Cross with claims processed through Anthem in this instance as the local affiliate and agent of Independence Blue Cross for purposes of claims processing in the State of Colorado.

668. Brandon Friedman was a Florida resident at all relevant times, and sought treatment while in Colorado.

669. Brandon Friedman validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

670. Brandon Friedman was admitted to the APN Lodge for residential treatment on November 11, 2022.

671. Over the course of Brandon Friedman's treatment, APN billed $139,345.00 for the cost of their treatment.

672. APN submitted the AOB signed by Brandon Friedman, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

673. In this instance, Anthem remitted payment directly to Brandon Friedman in violation of the AOB and Colorado law.

674. Anthem, Independence Blue Cross, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

675. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Brandon Friedman's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

676. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Brandon Friedman, have suffered both financial injury and loss of access to medically necessary treatment resources.

677. Rather than pay the full amount at issue, Anthem and the Plan paid just $24,946.50 for Brandon Friedman's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

678. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $114,398.50 less than they should have for Brandon Friedman's treatment.

679. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for David's treatment.

**Isabelle Deltergo**

680. Isabelle Deltergo ("Isabelle") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Massachusetts ("BCBSMA"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSMA for purposes of claims processing in the State of Colorado.

681. Isabelle was a resident of Pennsylvania at all relevant times, and sought treatment while in Colorado.

682. Isabelle validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

683. Isabelle was admitted to the APN Lodge for residential treatment on June 1, 2023.

684. Over the course of Isabelle's treatment, APN billed $229,235.00 for the cost of their treatment.

685. APN submitted the AOB signed by Isabelle, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

686. In this instance, Anthem and BCBSMA fully honored the AOB and respected the assignment, remitting payment directly to APN.

687. Anthem and BCBSMA never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

93

688. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and BCBSMA paid Isabelle's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

689. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Isabelle, have suffered both financial injury and loss of access to medically necessary treatment resources.

690. Rather than pay the full amount at issue, Anthem and BCBSMA paid just $87,998.46 for Isabelle's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

691. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $141,236.54 less than it should have for Isabelle's treatment.

692. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Isabelle's treatment.

**Joseph Devita**

693. Joseph Devita ("Joseph") was a participant or beneficiary of a fully-insured plan insured and administered by Excellus BlueCross Blue Shield ("Excellus"), with claims processed through Anthem in this instance as the local affiliate and agent of Excellus for purposes of claims processing in the State of Colorado.

694. Joseph was a resident of New York at all relevant times, and sought treatment while in Colorado.

94

695. Joseph validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

696. Joseph was admitted to residential treatment at the APN on October 6, 2023.

697. Over the course of Joseph's treatment, APN billed $170,810.00 for the cost of their treatment.

698. APN submitted the AOB signed by Joseph, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

699. With respect to several of the claims for this treatment, Anthem paid APN directly. However, for others, Anthem, the Plan, and Excellus instead remitted payment to Joseph directly, in violation of the AOB and Colorado law.

700. Anthem and Excellus never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

701. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Excellus paid Joseph's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

702. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Joseph, have suffered both financial injury and loss of access to medically necessary treatment resources.

703. Rather than pay the full amount at issue, Anthem and Excellus paid just $22,329.88 for Joseph's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

704. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Excellus paid $148,480.12 less than they should have for Joseph's treatment.

705. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Joseph's treatment.

**Kathleen Doss**

706. Kathleen Doss ("Kathleen") was a participant or beneficiary of a fully-insured plan insured and administered by Regence Blue Shield with claims processed through Anthem in this instance as the local affiliate and agent of Regence Blue Shield for purposes of claims processing in the State of Colorado.

707. Kathleen was a resident of Washington at all relevant times, and sought treatment while in Colorado.

708. Kathleen validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

709. Kathleen was admitted to partial hospitalization treatment at the APN Lodge on June 13, 2023.

710. Over the course of Kathleen's treatment, APN billed $167,790.00 for the cost of their treatment.

711. APN submitted the AOB signed by Kathleen, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

712. In this instance, Anthem and Regence Blue Shield fully honored the AOB and respected the assignment, remitting payment directly to APN.

713. Anthem and Regence Blue Shield never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

714. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Regence Blue Shield paid Kathleen's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

715. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Kathleen, have suffered both financial injury and loss of access to medically necessary treatment resources.

716. Rather than pay the full amount at issue, Anthem and Regence Blue Shield paid just $33,299.60 for Kathleen's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

717. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Regence Blue Shield paid $134,490.40 less than they should have for Kathleen's treatment.

718. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Kathleen's treatment.

**Kelly Johnson**

719. Kelly Johnson ("Kelly") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Kansas City, with claims processed through

97

Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Kansas City for purposes of claims processing in the State of Colorado.

720. Kelly was a resident of Kansas at all relevant times, and sought treatment while in Colorado.

721. Kelly validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

722. Kelly was admitted to the APN Lodge for residential treatment on July 12, 2023.

723. Over the course of Kelly's treatment, APN billed $134,850.00 for the cost of their treatment.

724. APN submitted the AOB signed by Kelly, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

725. With respect to several of the claims for this treatment, Anthem paid APN directly. However, for others, Anthem, the Plan, and Blue Cross and Blue Shield of Kansas City instead remitted payment to Kelly directly, in violation of the AOB and Colorado law.

726. Anthem and Blue Cross and Blue Shield of Kansas City never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

727. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and Blue Cross Blue Shield of Kansas City paid Kelly's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

728. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

treating analogous medical and surgical conditions, the Plaintiffs, including Kelly, have suffered both financial injury and loss of access to medically necessary treatment resources.

729. Rather than pay the full amount at issue, Anthem and Blue Cross Blue Shield of Kansas City paid just $33,723.59 for Kelly's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

730. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Blue Cross Blue Shield of Kansas City paid $101,126.41 less than they should have for Kelly's treatment.

731. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and Blue Cross Blue Shield of Kansas City would have paid substantially more for Kelly's treatment.

**Kimberly Findlen**

732. Kimberly Findlen ("Kimberly") was a participant or beneficiary of the self-funded Palo Alto Networks Welfare Benefit Plan, administered by Blue Shield of California, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Shield of California for purposes of claims processing in the State of Colorado.

733. Kimberly was a Tennessee resident at all relevant times.

734. Kimberly validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

735. Kimberly was admitted to residential treatment at the APN Lodge on May 25, 2023.

736. Over the course of Kimberly's treatment, APN billed $103,385.00 for the cost of their treatment.

737. APN submitted the AOB signed by Kimberly, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

738. In this instance, Anthem, the Plan, and Blue Shield of California fully honored the AOB and respected the assignment, remitting payment directly to APN.

739. Anthem, Blue Shield of California, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

740. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Kimberly's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

741. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Kimberly, have suffered both financial injury and loss of access to medically necessary treatment resources.

742. Rather than pay the full amount at issue, Anthem and the Plan paid just $25,438.53 for Kimberly's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

743. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $77,946.47 less than they should have for Kimberly's treatment.

744. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Kimberly's treatment.

100

**Megan Aranda Thompson**

745. Megan Aranda Thompson ("Megan") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Shield of California ("BSC"), with claims processed through Anthem in this instance as the local affiliate and agent of BSC for purposes of claims processing in the State of Colorado.

746. Megan was a resident of Iowa at all relevant times, and sought treatment while in Colorado.

747. Megan validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

748. Megan was admitted to residential treatment at the APN Lodge on June 13, 2023.

749. Over the course of Megan's treatment, APN billed $324,130.00 for the cost of their treatment.

750. APN submitted the AOB signed by Megan, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

751. With respect to several of the claims for this treatment, Anthem paid APN directly. However, for others, Anthem and BSC instead remitted payment to Megan directly, in violation of the AOB and Colorado law.

752. Anthem and BSC never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

753. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Megan's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

754. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Megan, have suffered both financial injury and loss of access to medically necessary treatment resources.

755. Rather than pay the full amount at issue, Anthem paid just $73,855.70 for Megan's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

756. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $250,274.39 less than it should have for Megan's treatment.

757. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Megan's treatment.

**Michael Bryant**

758. Michael Bryant ("Michael") was a participant or beneficiary of the self-funded MEDNAX Services, Inc. Employee Welfare Benefits Plan, administered by Blue Cross and Blue Shield of South Carolina ("BCBSSC") with claims processed through Anthem in this instance as the local affiliate and agent of BCBSSC for purposes of claims processing in the State of Colorado.

759. Michael was a Texas resident at all relevant times.

760. Michael validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

761. Michael was admitted to residential treatment at the APN Lodge on November 7, 2022.

762. Over the course of Michael's treatment, APN billed $80,910.00 for the cost of their treatment.

763. APN submitted the AOB signed by Michael, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

764. With respect to several of the claims for this treatment, Anthem, BCBSSC, and the applicable ERISA Plan paid APN directly. However, for others, Anthem, the Plan, and BCBSSC instead remitted payment to Michael directly, in violation of the AOB and Colorado law.

765. Anthem, Blue Cross and Blue Shield of South Carolina, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

766. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Michael's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

767. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Michael, have suffered both financial injury and loss of access to medically necessary treatment resources.

768. Rather than pay the full amount at issue, Anthem and the Plan paid just $29,593.88 for Michael's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

769. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $51,316.12 less than they should have for Michael's treatment.

770. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Michael's treatment.

**Pierre Villere**

771. Pierre Villere ("Pierre") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Louisiana ("BCBSLA"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSLA for purposes of claims processing in the State of Colorado.

772. Pierre was a resident of Louisiana at all relevant times, and sought treatment while in Colorado.

773. Pierre validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

774. Pierre was admitted to treatment at Aurora Detox on February 3, 2023. Pierre spent three days at Aurora Detox before transitioning to residential treatment at the APN Lodge.

775. Over the course of Pierre's treatment, APN billed $154,830.00 for the cost of their treatment.

776. APN submitted the AOB signed by Pierre, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

777. With respect to several of the claims for this treatment, Anthem communicated with APN directly with EOBs indicating no benefits would be paid. However, for others, Anthem and

BCBSLA communicated with Pierre instead to communicate the same message, in violation of the AOB and Colorado law.

778. Anthem and BCBSLA never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

779. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Pierre's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

780. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Pierre, have suffered both financial injury and loss of access to medically necessary treatment resources.

781. Rather than pay the full amount at issue, Anthem and BCBSLA paid nothing for Pierre's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

782. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and BCBSLA paid $154,830.00 less than they should have for Pierre's treatment.

783. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and BCBSLA would have paid substantially more for Pierre's treatment.

### Sarah Ames

784. Sarah Ames ("Sarah") was a participant or beneficiary of the self-funded WellSky Health and Welfare Plan, administered by Blue Cross and Blue Shield of South Carolina

105

("BCBSSC") with claims processed through Anthem in this instance as the local affiliate and agent of BCBSSC for purposes of claims processing in the State of Colorado.

785. Sarah was a Massachusetts resident at all relevant times.

786. Sarah validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

787. Sarah was admitted to the APN Lodge for residential treatment on November 14, 2022.

788. Over the course of Sarah's treatment, APN billed $139,345.00 for the cost of their treatment.

789. APN submitted the AOB signed by Sarah, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

790. With respect to several of the claims for this treatment, Anthem, BCBSSC, and the applicable ERISA Plan paid APN directly. However, for others, Anthem, the Plan, and BCBSSC instead remitted payment to Sarah directly, in violation of the AOB and Colorado law.

791. Anthem, BCBSSC, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

792. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Sarah's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

793. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

106

treating analogous medical and surgical conditions, the Plaintiffs, including Sarah have suffered both financial injury and loss of access to medically necessary treatment resources.

794. Rather than pay the full amount at issue, Anthem and the Plan paid just $49,509.37 for Sarah's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

795. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $93,835.63 less than they should have for Sarah's treatment.

796. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Sarah's treatment.

**Timothy Burke**

797. Timothy Burke ("Timothy") was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Kansas City, Missouri, with claims processed through Anthem in this instance as the local affiliate and agent of Blue Cross and Blue Shield of Kansas City, Missouri for purposes of claims processing in the State of Colorado.

798. Timothy was a resident of Kansas at all relevant times, and sought treatment while in Colorado.

799. Timothy validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

800. Timothy was admitted to treatment for substance use detox and residential treatment on October 14, 2023. Timothy spent 6 days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

801. Over the course of Timothy's treatment, APN billed $214,265.00 for the cost of their treatment.

802. APN submitted the AOB signed by Timothy, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

803. With respect to several of the claims for this treatment, Anthem paid APN directly. However, for others, Anthem and Blue Cross and Blue Shield of Kansas City, Missouri, instead remitted payment to Timothy directly, in violation of the AOB and Colorado law.

804. Anthem and Blue Cross and Blue Shield of Kansas City, Missouri, never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

805. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Timothy's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

806. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Timothy, have suffered both financial injury and loss of access to medically necessary treatment resources.

807. Rather than pay the full amount at issue, Anthem paid just $49,262.97 for Timothy's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

808. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $165,002.03 less than it should have for Timothy's treatment.

809. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Timothy's treatment.

**Toby Breski**

810. Toby Breski ("Toby") was a participant or beneficiary of a fully-insured plan insured and administered by Horizon Blue Cross and Blue Shield of New Jersey ("Horizon BCBSNJ"), with claims processed through Anthem in this instance as the local affiliate and agent of Horizon BCBSNJ for purposes of claims processing in the State of Colorado.

811. Toby was a resident of New Jersey at all relevant times, and sought treatment while in Colorado.

812. Toby validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

813. Toby was admitted to treatment residential treatment at APN Lodge on November 1, 2022.

814. Over the course of Toby's treatment, APN billed $305,145 for the cost of their treatment.

815. APN submitted the AOB signed by Toby, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

816. In this instance, Anthem, the Plan, and Horizon BCBSNJ fully honored the AOB and respected the assignment, remitting payment directly to APN.

817. Anthem and Horizon BCBSNJ never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

818. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Toby's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

819. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Toby, have suffered both financial injury and loss of access to medically necessary treatment resources.

820. Rather than pay the full amount at issue, Anthem paid just $69,179.24 for Toby's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

821. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $235,965.76 less than it should have for Toby's treatment.

822. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and Horizon BCBSNJ would have paid substantially more for Toby's treatment.

**Trish Phthalo**

823. Trish Phthalo was a participant or beneficiary of the self-funded Amazon and Subsidiaries Shared Deductible Plan, administered by Premera Blue Cross with claims processed through Anthem in this instance as the local affiliate and agent of Premera Blue Cross for purposes of claims processing in the State of Colorado.

824. Trish was a Washington resident at all relevant times.

825. Trish validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

826. Trish was admitted to residential treatment at the APN Lodge on September 6, 2023.

827. Over the course of Trish's treatment, APN billed $31,465.00 for the cost of their treatment.

828. APN submitted the AOB signed by Trish, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

829. In this instance, Anthem, Premera Blue Cross, and the Plan never honored the AOB or respected the assignment, and no benefits were received by APN or by Trish.

830. Anthem, Premera Blue Cross, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

831. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Trish's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

832. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Trish, have suffered both financial injury and loss of access to medically necessary treatment resources.

833. Rather than pay the full amount at issue, Anthem and the Plan paid nothing for Trish's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

834. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $31,465.00 less than they should have for Trish's treatment.

835. Upon information and belief, if the APN Lodge was network with Anthem, Anthem and the Plan would have paid substantially more for Trish's treatment.

**Victoria Hensel**

836. Victoria Hensel ("Victoria") was a participant or beneficiary of the self-funded Pathway Vet Alliance LLC Health and Welfare Plan administered by Blue Cross and Blue Shield of Texas ("BCBSTX"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSTX for purposes of claims processing in the State of Colorado.

837. Victoria was a Maryland resident at all relevant times.

838. Victoria validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

839. Victoria was admitted to Aurora Detox on November 14, 2022. Victoria spent 4 days at Aurora Detox before transferring to the APN Lodge, with the remainder of their treatment occurring at the APN Lodge.

840. Over the course of Victoria's treatment, APN billed $154,830.00 for the cost of their treatment.

841. APN submitted the AOB signed by Victoria, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

842. With respect to several of the claims for this treatment, Anthem, BCBSTX, and the applicable ERISA Plan paid APN directly. However, for others, Anthem, the Plan, and

112

Blue Cross and Blue Shield of Texas instead remitted payment to Victoria directly, in violation of the AOB and Colorado law.

843. Anthem, BCBSTX, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

844. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Victoria's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

845. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Victoria, have suffered both financial injury and loss of access to medically necessary treatment resources.

846. Rather than pay the full amount at issue, Anthem and the Plan paid just $10,684.92 for Victoria's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

847. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $144,145.08 less than they should have for Victoria's treatment.

848. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem and the Plan would have paid substantially more for Victoria's treatment.

**John Armour**

849. John Armour was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

850. John Armour was a resident of Kansas at all relevant times, and sought treatment while in Colorado.

851. John Armour validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

852. John Armour was admitted to residential treatment at the APN Lodge on May 19, 2022.

853. Over the course of John Armour's treatment, APN billed $125,860.00 for the cost of their treatment.

854. APN submitted the AOB signed by John Armour, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

855.  In this instance, Anthem remitted payment directly to John Armour in violation of the AOB and Colorado law.

856. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

857. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid John Armour's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

858. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

114

treating analogous medical and surgical conditions, the Plaintiffs, including John Armour, have suffered both financial injury and loss of access to medically necessary treatment resources.

859. Rather than pay the full amount at issue, Anthem paid just $7,132.00 for John Armour's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

860. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $118,728.00 less than it should have for John Armour's treatment.

861. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for John Armour's treatment.

**Mitchell Biener**

862. Mitchell Biener was a participant or beneficiary of a fully-insured plan insured and administered by Blue Cross and Blue Shield of Texas ("BCBSTX"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSTX for purposes of claims processing in the State of Colorado.

863. Mitchell Biener was a resident of Texas at all relevant times, and sought treatment while in Colorado.

864. Mitchell Biener validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

865. Mitchell Biener was admitted to treatment for substance use detox and residential treatment on June 10, 2023. Mitchell Biener spent 5 days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

115

866. Over the course of Mitchell Biener's treatment, APN billed $181,795.00 for the cost of their treatment.

867. APN submitted the AOB signed by Mitchell Biener, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

868. In this instance, Anthem and BCBSTX remitted payment directly to Mitchell Biener in violation of the AOB and Colorado law.

869. Anthem and BCBSTX never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

870. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Mitchell Biener's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

871. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Mitchell Biener, have suffered both financial injury and loss of access to medically necessary treatment resources.

872. Rather than pay the full amount at issue, Anthem and BCBSTX paid just $1,440.75 for Mitchell Biener's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

873. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and BCBSTX paid $180,354.25 less than they should have for Mitchell Biener's treatment.

874. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem would have paid substantially more for Mitchell Biener's treatment.

**Conner Coleman**

875. Conner Coleman was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

876. Conner Coleman was a resident of Missouri at all relevant times, and sought treatment while in Colorado.

877. Conner Coleman validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

878. Conner Coleman was admitted to the APN Lodge for residential and partial hospitalization treatment on June 7, 2021.

879. Over the course of Conner Coleman's treatment, APN billed $119,835.00 for the cost of their treatment.

880. APN submitted the AOB signed by Conner Coleman, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

881. In this instance, Anthem remitted payment directly to Conner Coleman in violation of the AOB and Colorado law.

882. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

883. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Conner Coleman's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

884. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Conner Coleman, have suffered both financial injury and loss of access to medically necessary treatment resources.

885. Rather than pay the full amount at issue, Anthem paid just $7,477.00 for Conner Coleman's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

886. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $112,358.00 less than it should have for Conner Coleman's treatment.

887. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Conner Coleman's treatment.

**Diana Cowgill**

888. Diana Cowgill was a participant or beneficiary of the self-funded Vox Media, LLC Employee Benefits Plan, administered by Anthem Blue Cross Blue Shield, with claims processed through Anthem in this instance as the local affiliate and agent of Anthem Blue Cross Blue Shield for purposes of claims processing in the State of Colorado.

889. Diana Cowgill was a California resident at all relevant times.

118

890. Diana Cowgill validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

891. Diana Cowgill was admitted to residential treatment at the APN Lodge on May 23, 2022.

892. Over the course of Diana Cowgill's treatment, APN billed $83,895.00 for the cost of their treatment.

893. APN submitted the AOB signed by Diana Cowgill, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

894. In this instance, Anthem remitted payment directly to Diana Cowgill in violation of the AOB and Colorado law.

895. Anthem, Anthem Blue Cross Blue Shield, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

896. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Diana Cowgill's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

897. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Diana Cowgill, have suffered both financial injury and loss of access to medically necessary treatment resources.

119

898. Rather than pay the full amount at issue, Anthem and the Plan paid just $29,785.98 for Diana Cowgill's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

899. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $54,109.02 less than they should have for Diana Cowgill's treatment.

900. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Diana Cowgill's treatment.

**Dianna Deshler**

901. Dianna Deshler was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

902. Dianna Deshler was a resident of New Jersey at all relevant times, and sought treatment while in Colorado.

903. Dianna Deshler validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

904. Dianna Deshler was admitted to the APN Lodge for residential treatment and partial hospitalization on September 7, 2021.

905. Over the course of Dianna Deshler's treatment, APN billed $118,850.00 for the cost of their treatment.

906. APN submitted the AOB signed by Dianna Deshler, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

120

907. In this instance, Anthem remitted payment directly to Dianna Deshler in violation of the AOB and Colorado law.

908. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

909. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Dianna Deshler's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

910. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Dianna Deshler, have suffered both financial injury and loss of access to medically necessary treatment resources.

911. Rather than pay the full amount at issue, Anthem paid just $47,081.00 for Dianna Deshler's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

912. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $71,769.00 less than it should have for Dianna Deshler's treatment.

913. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Dianna Deshler's treatment.

**Taylor Fleck**

121

914. Taylor Fleck was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

915. Taylor Fleck was a resident of Florida at all relevant times, and sought treatment while in Colorado.

916. Taylor Fleck validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

917. Taylor Fleck was admitted to the APN Lodge for residential treatment and partial hospitalization on June 25, 2021.

918. Over the course of Taylor Fleck's treatment, APN billed $208,220.00 for the cost of their treatment.

919. APN submitted the AOB signed by Taylor Fleck, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

920. In this instance, Anthem remitted payment directly to Taylor Fleck in violation of the AOB and Colorado law.

921. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

922. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Taylor Fleck's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

923. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Taylor Fleck, have suffered both financial injury and loss of access to medically necessary treatment resources.

924. Rather than pay the full amount at issue, Anthem paid just $67,722.00 for Taylor Fleck's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

925. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $140,498.00 less than it should have for Taylor Fleck's treatment.

926. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Taylor Fleck's treatment.

**Priscilla Gonzalez**

927. Priscilla Gonzalez was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

928. Priscilla Gonzalez was a resident of California at all relevant times, and sought treatment while in Colorado.

929. Priscilla Gonzalez validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

930. Priscilla Gonzalez was admitted to the APN Lodge for residential treatment on January 6, 2022.

931. Over the course of Priscilla Gonzalez's treatment, APN billed $121,850.00 for the cost of their treatment.

932. APN submitted the AOB signed by Priscilla Gonzalez, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

933. In this instance, Anthem remitted payment directly to Priscilla Gonzalez in violation of the AOB and Colorado law.

934. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

935. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Priscilla Gonzalez's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

936. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Priscilla Gonzalez, have suffered both financial injury and loss of access to medically necessary treatment resources.

937. Rather than pay the full amount at issue, Anthem paid just $57,676.00 for Priscilla Gonzalez's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

938. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $64,174.00 less than it should have for Priscilla Gonzalez's treatment.

939. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Priscilla Gonzalez's treatment.

**James Hageney**

940. James Hageney was a participant or beneficiary of a fully-insured plan insured and administered by Independence Blue Cross, with claims processed through Anthem in this instance as the local affiliate and agent of Independence Blue Cross for purposes of claims processing in the State of Colorado.

941. James Hageney was a resident of Pennsylvania at all relevant times, and sought treatment while in Colorado.

942. James Hageney validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

943. James Hageney was admitted to treatment for substance use detox and residential treatment on March 28, 2022. James Hageney spent 4 days at Aurora Detox, with the remainder of their treatment occurring at the APN Lodge.

944. Over the course of James Hageney's treatment, APN billed $161,820.00 for the cost of their treatment.

945. APN submitted the AOB signed by James Hageney, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

946. In this instance, Anthem remitted payment directly to James Hageney in violation of the AOB and Colorado law.

947. Anthem and Independence Blue Cross never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

948. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid James Hageney's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

949. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including James Hageney, have suffered both financial injury and loss of access to medically necessary treatment resources.

950. Rather than pay the full amount at issue, Anthem and Independence Blue Cross paid just $17,686.67 for James Hageney's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

951. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and Independence Blue Cross paid $144,133.33 less than they should have for James Hageney's treatment.

952. Upon information and belief, if Aurora Detox and the APN Lodge were network with Anthem, Anthem would have paid substantially more for James Hageney's treatment.

**James Holloway**

953. James Holloway was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an

Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

954. James Holloway was a resident of Washington at all relevant times, and sought treatment while in Colorado.

955. James Holloway validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

956. James Holloway was admitted to partial hospitalization treatment at the APN Lodge on November 26, 2021.

957. Over the course of James Holloway's treatment, APN billed $55,920.00 for the cost of their treatment.

958. APN submitted the AOB signed by James Holloway, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

959. In this instance, Anthem never honored the AOB or respected the assignment, and no benefits were received either by APN or by James Holloway.

960. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

961. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid James Holloway's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

962. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers

treating analogous medical and surgical conditions, the Plaintiffs, including James Holloway, have suffered both financial injury and loss of access to medically necessary treatment resources.

963. Rather than pay the full amount at issue, Anthem paid nothing for James Holloway's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

964. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $55,920.00 less than it should have for James Holloway's treatment.

965. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for James Holloway's treatment.

**Emily Lamar**

966. Emily Lamar was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

967. Emily Lamar was a resident of Kansas at all relevant times, and sought treatment while in Colorado.

968. Emily Lamar validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

969. Emily Lamar was admitted to the APN Lodge for residential treatment on March 28, 2022.

970. Over the course of Emily Lamar's treatment, APN billed $17,980.00 for the cost of their treatment.

971. APN submitted the AOB signed by Emily Lamar, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

972. In this instance, Anthem remitted payment directly to Emily Lamar in violation of the AOB and Colorado law.

973. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

974. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Emily Lamar's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

975. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Emily Lamar, have suffered both financial injury and loss of access to medically necessary treatment resources.

976. Rather than pay the full amount at issue, Anthem paid just $260.00 for Emily Lamar's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

977. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $17,720.00 less than it should have for Emily Lamar's treatment.

978. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Emily Lamar's treatment.

**Michael Meyer**

979. Michael Meyer was a participant or beneficiary of the self-funded G&A Outsourcing, Inc. dba G&A Partners Employee Benefit Plan, administered by Regence BlueCross BlueShield of Utah ("BCBSUT"), with claims processed through Anthem in this instance as the local affiliate and agent of BCBSUT for purposes of claims processing in the State of Colorado.

980. Michael Meyer was a Florida resident at all relevant times.

981. Michael Meyer validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

982. Michael Meyer was admitted to treatment for residential treatment on May 13, 2021.

983. Over the course of Michael Meyer's treatment, APN billed $111,860.00 for the cost of their treatment.

984. APN submitted the AOB signed by Michael Meyer, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

985. In this instance, Anthem remitted payment directly to Michael Meyer in violation of the AOB and Colorado law.

986. Anthem, BCBSUT, and the Plan never communicated any refusal to honor the AOB and never asserted that it was invalid before litigation.

987. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem and the Plan paid Michael Meyer's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network

130

providers of residential treatment or network providers of analogous medical and surgical care.

988. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Michael Meyer, have suffered both financial injury and loss of access to medically necessary treatment resources.

989. Rather than pay the full amount at issue, Anthem and the Plan paid nothing for Michael Meyer's treatment. As a result of this underpayment, APN was paid less than the cost to provide the treatment at issue.

990. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem and the Plan paid $111,860.00 less than they should have for Michael Meyer's treatment.

991. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Michael Meyer's treatment.

**Kristin Morris**

992. Kristin Morris was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

993. Kristin Morris was a resident of Maryland at all relevant times, and sought treatment while in Colorado.

994. Kristin Morris validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

131

995. Kristin Morris was admitted to the APN Lodge for residential treatment on September 10, 2021.

996. Over the course of Kristin Morris's treatment, APN billed $163,795.00 for the cost of their treatment.

997. APN submitted the AOB signed by Kristin Morris, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

998. In this instance, Anthem remitted payment directly to Kristin Morris in violation of the AOB and Colorado law.

999. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1000. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Kristin Morris's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1001. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Kristin Morris, have suffered both financial injury and loss of access to medically necessary treatment resources.

1002. Rather than pay the full amount at issue, Anthem paid just $39,523.00 for Kristin Morris's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1003. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $124,272.00 less than it should have for Kristin Morris's treatment.

1004. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Kristin Morris's treatment.

**Tamara Saltonstall**

1005. Tamara Saltonstall was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1006. Tamara Saltonstall was a resident of Virginia at all relevant times, and sought treatment while in Colorado.

1007. Tamara Saltonstall validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1008. Tamara Saltonstall was admitted to the APN Lodge for residential treatment on June 7, 2021.

1009. Over the course of Tamara Saltonstall's treatment, APN billed $119,850.00 for the cost of their treatment.

1010. APN submitted the AOB signed by Tamara Saltonstall, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1011. In this instance, Anthem remitted payment directly to Tamara Saltonstall in violation of the AOB and Colorado law.

1012. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1013. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Tamara Saltonstall's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1014. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Tamara Saltonstall, have suffered both financial injury and loss of access to medically necessary treatment resources.

1015. Rather than pay the full amount at issue, Anthem paid just $39,308.00 for Tamara Saltonstall's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1016. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $80,542.00 less than it should have for Tamara Saltonstall's treatment.

1017. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Tamara Saltonstall's treatment.

**Matt Schaber**

1018. Matt Schaber was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1019. Matt Schaber was a resident of Illinois at all relevant times, and sought treatment while in Colorado.

1020. Matt Schaber validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1021. Matt Schaber was admitted to the APN Lodge for residential treatment and partial hospitalization on June 21, 2021.

1022. Over the course of Matt Schaber's treatment, APN billed $169,275.00 for the cost of their treatment.

1023. APN submitted the AOB signed by Matt Schaber, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1024. In this instance, Anthem remitted payment directly to Matt Schaber in violation of the AOB and Colorado law.

1025. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1026. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Matt Schaber's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1027. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Matt Schaber, have suffered both financial injury and loss of access to medically necessary treatment resources.

1028. Rather than pay the full amount at issue, Anthem paid just $2,760.00 for Matt Schaber's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1029. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $166,515.00 less than it should have for Matt Schaber's treatment.

1030. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Matt Schaber's treatment.

**Jessica Sigmon**

1031. Jessica Sigmon was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1032. Jessica Sigmon was a resident of Oklahoma at all relevant times, and sought treatment while in Colorado.

1033. Jessica Sigmon validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1034. Jessica Sigmon was admitted to the APN Lodge for residential treatment and partial hospitalization on February 10, 2021.

1035. Over the course of Jessica Sigmon's treatment, APN billed $83,890.00 for the cost of their treatment.

1036. APN submitted the AOB signed by Jessica Sigmon, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1037. In this instance, Anthem remitted payment directly to Jessica Sigmon in violation of the AOB and Colorado law.

1038. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1039. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Jessica Sigmon's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1040. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Jessica Sigmon, have suffered both financial injury and loss of access to medically necessary treatment resources.

1041. Rather than pay the full amount at issue, Anthem paid just $26,163.00 for Jessica Sigmon's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1042. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $57,727.00 less than it should have for Jessica Sigmon's treatment.

1043. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Jessica Sigmon's treatment.

**Elizabeth Stone**

1044. Elizabeth Stone was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1045. Elizabeth Stone was a resident of New Hampshire at all relevant times, and sought treatment while in Colorado.

1046. Elizabeth Stone validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1047. Elizabeth Stone was admitted to the APN Lodge for residential treatment and partial hospitalization on July 14, 2021.

1048. Over the course of Elizabeth Stone's treatment, APN billed $161,285.00 for the cost of their treatment.

1049. APN submitted the AOB signed by Elizabeth Stone, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1050. In this instance, Anthem remitted payment directly to Elizabeth Stone in violation of the AOB and Colorado law.

1051. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1052. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Elizabeth Stone's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1053. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Elizabeth Stone, have suffered both financial injury and loss of access to medically necessary treatment resources.

1054. Rather than pay the full amount at issue, Anthem paid just $14,810.00 for Elizabeth Stone's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1055. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $146,475.00 less than it should have for Elizabeth Stone's treatment.

1056. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Elizabeth Stone's treatment.

**Tamara Taylor**

139

1057. Tamara Taylor was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1058. Tamara Taylor was a resident of Texas at all relevant times, and sought treatment while in Colorado.

1059. Tamara Taylor validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1060. Tamara Taylor was admitted to the APN Lodge for residential treatment and partial hospitalization on March 21, 2022.

1061. Over the course of Tamara Taylor's treatment, APN billed $241,715.00 for the cost of their treatment.

1062. APN submitted the AOB signed by Tamara Taylor, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1063. In this instance, Anthem remitted payment directly to Tamara Taylor in violation of the AOB and Colorado law.

1064. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1065. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Tamara Taylor's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1066. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Tamara Taylor, have suffered both financial injury and loss of access to medically necessary treatment resources.

1067. Rather than pay the full amount at issue, Anthem paid just $640.00 for Tamara Taylor's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1068. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $241,075.00 less than it should have for Tamara Taylor's treatment.

1069. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Tamara Taylor's treatment.

**Matthew Urlacher**

1070. Matthew Urlacher was a participant or beneficiary of a presently-unidentified plan with claims processed through Anthem in this instance as the local affiliate and agent of an Anthem Affiliate Claims Administrator for purposes of claims processing in the State of Colorado.

1071. Matthew Urlacher was a resident of North Dakota at all relevant times, and sought treatment while in Colorado.

1072. Matthew Urlacher validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1073. Matthew Urlacher was admitted to the APN Lodge for residential treatment on September 20, 2021.

1074. Over the course of Matthew Urlacher's treatment, APN billed $107,865.00 for the cost of their treatment.

1075. APN submitted the AOB signed by Matthew Urlacher, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1076. In this instance, Anthem remitted payment directly to Matthew Urlacher in violation of the AOB and Colorado law.

1077. Anthem and the relevant Anthem Affiliate Claims Administrator never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1078. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Matthew Urlacher's claims at substantially reduced amounts compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1079. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Matthew Urlacher, have suffered both financial injury and loss of access to medically necessary treatment resources.

1080. Rather than pay the full amount at issue, Anthem paid just $31,779.00 for Matthew Urlacher's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1081. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $76,086.00 less than it should have for Matthew Urlacher's treatment.

1082. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Matthew Urlacher's treatment.

**Glenn Howard**

1083. Glenn Howard was a participant or beneficiary of a fully-insured plan insured and administered by Anthem.

1084. Glenn Howard was a resident of Texas at all relevant times, and sought treatment while in Colorado.

1085. Glenn Howard validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. §1132, to APN.

1086. Glenn Howard was admitted to the APN Lodge for residential treatment on July 3, 2023.

1087. Over the course of Glenn Howard's treatment, APN billed $126,855.00 for the cost of their treatment.

1088. APN submitted the AOB signed by Glenn Howard, as well as the UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1089. In this instance, Anthem remitted payment directly to Glenn Howard in violation of the AOB and Colorado law.

1090. Anthem never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1091. Because APN is a non-network provider of mental health and substance use disorder treatment, Anthem paid Glenn Howard's claims at substantially reduced amounts compared

both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1092. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including Glenn Howard, have suffered both financial injury and loss of access to medically necessary treatment resources.

1093. Rather than pay the full amount at issue, Anthem paid just $27,250.00 for Glenn Howard's treatment. As a result of this underpayment, APN was paid less than its cost to provide the treatment at issue.

1094. As a result of Anthem's insufficient network of substance use detox facilities in Colorado and residential treatment providers on the Western Slope, Anthem paid $99,605.00 less than it should have for Glenn Howard's treatment.

1095. Upon information and belief, if the APN Lodge was network with Anthem, Anthem would have paid substantially more for Glenn Howard's treatment.

**The Remaining Patient Does**

1096. As discussed previously, the APN Plaintiffs continue to identify Patient and Plan Does in this case whose claims were underpaid by Anthem, the Plans, and the Anthem Entity Claims Administrators.

1097. Upon information and belief, there are still several hundred more Assignor Patients whose claims have been underpaid by Anthem, the Plans, and the Anthem Entity Claims Administrators.

144

1098. In every instance, the APN Plaintiffs submitted the AOB signed by the Assignor Patients, as well as UB-04 claim forms indicating benefits were assigned, to Anthem for processing.

1099. Anthem, the Plans, and the Anthem Entity Claims Administrators never communicated any refusal to honor the AOBs and never indicated benefits would not be paid because of the assignment.

1100. Because the APN Plaintiffs are non-network providers of mental health and substance use disorder treatment, Anthem, the Plans, and the Anthem Entity Claims Administrators paid the Assignor Patients' claims at substantially reduced rates compared both to the billed charges and the rates Anthem pays its network providers of residential treatment or network providers of analogous medical and surgical care.

1101. Upon information and belief, if the APN Lodge and Aurora Detox were in-network with Anthem, then Anthem, the Plans, and the Anthem Affiliate Claims Administrators would have paid substantially more for the Assignor Patients' treatment.

1102. Because Anthem maintains an inadequate network of contracted mental health and substance use disorder treatment providers compared to its network of contracted providers treating analogous medical and surgical conditions, the Plaintiffs, including the Assignor Patients, have suffered both financial injury and loss of access to medically necessary treatment resources.

## FIRST CAUSE OF ACTION

**(Claim for violations of the Mental Health Parity and Addiction Equity Act of 2008, under 29 U.S.C. §1132(a)(3), 29 U.S.C. §1185a, and 42 U.S.C. §300gg-26 against Anthem and all of the Plan Defendants subject to MHPAEA)**

1103. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants,

145

beneficiaries, and assignees stepping into their shoes as a requirement of both ERISA and MHPAEA.

1104. MHPAEA is also applicable to non-ERISA plans, individual health insurance plans, and nonfederal government plans.

1105. Anthem has a fiduciary duty to comply with both ERISA and MHPAEA.

1106. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

1107. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits.

1108. MHPAEA also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. §1185a(a)(3)(A)(ii).

1109. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; plan or issuer methods for determining out-of-network rates; standards relating to network composition, including but not limited to standards for provider and facility admission to a network or participation in the network, methods for determining reimbursement rates, credentialing standards, and procedures for ensuring the network includes an adequate number of each category of provider and facility to provide services under the plan or coverage; and restrictions based on geographic location, facility type, or provider specialty, and other criteria that limit the scope or duration of benefits for

services provided under the plan or coverage. 29 C.F.R. §2590.712(c)(4)(ii)(A-H); 78 Fed. Reg. 68239, 68246 (Nov. 13, 2013) (specifically mentioning "network adequacy").

1110. Despite being aware of the AOBs signed by the Assignor Patients, Anthem persisted in and continues even now to issue payments for services received at APN facilities directly to its insureds rather than to APN.

1111. APN's efforts to recover these payments has failed in several hundred instances.

1112. Anthem has ignored multiple attempts by APN and its counsel to rectify this error without resorting to litigation and has refused to enter into any dialogue regarding its practices. As mentioned above, the APN Plaintiffs are currently pursuing a related lawsuit against Anthem for its pay-to-subscriber practices.[8]

1113. Whether the communications concerned network inadequacy or pay-to-subscriber practices, Anthem has refused to ever meaningfully respond to Plaintiffs or their representatives.

1114. Because Anthem has refused to meaningfully negotiate or communicate with APN, it has never even attempted to address the inadequacy of its network of mental health and substance use providers. To the extent that the Plaintiffs have sought to apprise Anthem of this issue, Anthem has refused to meaningfully respond.

1115. Similarly, Anthem refused to negotiate any contract agreements with APN, despite APN being the only provider capable of providing core mental health and substance use disorder treatments to hundreds of thousands of Coloradans in a manner that allows Anthem to

---

[8] *Supra*, fn. 1. Plaintiffs note that descriptions of Anthem's pay-to-subscriber practices are not the basis of Plaintiffs' Parity Act claims; these allegations are intended to inform the Court of Anthem's pattern of misconduct and refusal to engage in meaningful dialogue with the APN Plaintiffs to this point.

comply with C.R.S. §10-16-704 and its implementing regulations.

1116. Anthem's actions have caused significant monetary harm to APN by systematically withholding or diverting funds for services properly payable to APN, and have further caused harm to APN's relationship with its patients by forcing APN to either attempt (largely unsuccessfully) to recover monies owed for services provided or write off the unrecovered sums as a loss.

1117. Where recovery of the funds improperly issued to insureds rather than to APN has been successful, APN has discovered that these funds are paid at a rate substantially less, even, than the amount paid to Anthem's network facilities.

1118. Upon investigating the adequacy of Anthem's network of mental health and substance use disorder facilities, Plaintiffs determined that Anthem contracted with substantially fewer substance use detox facilities within 100 miles of Denver than analogous medical or surgical facilities and providers.

1119. Similarly, Plaintiffs determined that Anthem contracted with no psychiatric residential treatment facilities treating mental health and substance use disorders anywhere on the Western Slope of Colorado.

1120. In the same vein, Plaintiffs determined that Anthem contracted with substantially fewer facilities capable of providing mental health and substance use partial hospitalization treatment on the Western Slope of Colorado than any of the medical/surgical analogs.

1121. By offering few or no network options for this type of treatment to its participants and beneficiaries, Anthem ensures that it only pays for mental health and substance use disorder treatment at artificially low out-of-network rates where participants and beneficiaries seeking analogous medical or surgical care are reimbursed at substantially

higher network rates.

1122. Anthem's failure to provide network facilities sufficient in number and type to ensure all covered services are accessible without reasonable delay to participants and beneficiaries on the Western Slope of Colorado also violates C.R.S. §10-16-704.[9]

1123. The APN Plaintiffs were unaware of the discrepancy between Anthem's network of medical and surgical facilities and its network of mental health and substance use disorder facilities until September of 2023 at the earliest.

1124. While the APN Plaintiffs were vaguely aware of the discrepancy between Anthem's network of medical and surgical facilities and its network of mental health and substance use disorder facilities as early as September of 2023, Plaintiffs did not obtain access to or review Anthem's fiscal year 2024 network adequacy filings with the State of Colorado until Spring of 2025.

1125. As a result, the APN Plaintiffs were not aware that Anthem was actively misrepresenting the availability of mental health and substance use disorder providers until Spring of 2025, and was not aware of the process by which Anthem violated MHPAEA and Colorado's regulatory requirements, until then.

1126. As a result, the APN Plaintiffs could not have possibly brought these claims in conjunction with their related case against Anthem.

1127. Plaintiffs continue to discover these discrepancies in payments made directly to their assignors rather than Plaintiffs and continue to identify the relevant Plan Does and Anthem Affiliate Claims Administrators for the hundreds of patients whose claims were underpaid.

---

[9] Plaintiffs do not seek remedies under C.R.S. §10-16-704 in this cause of action, but assert that C.R.S. §10-16-704(3)(d) may help guide the Court's analysis of appropriate equitable remedies in this instance.

1128. Plaintiffs seek only remedies relating to those claims Anthem paid or will pay at insufficient rates for services APN provided to the Assignor Patients after June, 2022.

1129. In addition, for many of the named patient plaintiffs, they were not aware of any potential discrepancy in Anthem's network until as late as October of 2025.

1130. The APN Plaintiffs continue to inform named patient plaintiffs, and prospective named patient plaintiffs, of the extent of Anthem's misconduct.

1131. Where individually named patient plaintiffs only came to be aware of Anthem's misconduct by way of notice from the APN Plaintiffs within the past several months, their claims are timely under 29 U.S.C. §1113.

**Network Insufficiency: Substance Use Disorder Detox Facilities**

1132. Upon information and belief, Anthem has very few network mental health and substance use disorder facilities akin to APN's Aurora, Colorado Detox facility that can provide detoxification services anywhere in the front range of Colorado or within 100 miles of the Denver Metropolitan Statistical Area.

1133. Upon information and belief, Anthem has thirty-nine network facilities within 100 miles of Denver that provide substance use disorder rehabilitation services.

1134. Upon information and belief, fifteen of those facilities are actually detox facilities,[10] and only a few of those fifteen facilities provide both sub-acute residential and intensive outpatient substance use disorder treatment.

1135. On the other hand, Anthem has at least 71 network Skilled Nursing Facility and rehabilitation center/clinic providers within 100 miles of Denver providing a similar level

---

[10] Several providers listed by Anthem as network facilities providing substance use detox services do not actually provide those services, and are instead therapists or other types of outpatient providers.

of intermediate services.

1136. Because Anthem fails to maintain an appropriate network of detoxification facilities within 100 miles of Denver, offering just fifteen such facilities in comparison to nearly five times more network analogous medical or surgical facilities, Anthem's network composition violates MHPAEA.

## Network Insufficiency:

## Psychiatric Residential Treatment on the Western Slope of Colorado

1137. Upon information and belief, Anthem has zero network mental health and substance use disorder facilities providing sub-acute psychiatric residential treatment services to all of its insureds on the Western Slope of Colorado.

1138. Anthem has no network psychiatric residential treatment facilities within 70 miles of Edwards, Colorado.[11]

1139. Anthem has only one network facility purporting to provide psychiatric residential treatment within 100 miles of Glenwood Springs, Colorado, but this Grand Junction, Colorado facility only treats patients with traumatic brain injuries.[12]

1140. The same facility is also Anthem's only purported network residential treatment offering within 100 miles of Telluride, Colorado.

1141. The same facility is also Anthem's only purported network residential treatment offering within 100 miles of Montrose, Colorado.

1142. The same facility is also Anthem's only purported network residential treatment offering within 100 miles of Gunnison, Colorado.

---

[11] The only providers within 100 miles are in Denver or further afield on the front range.
[12] This facility, "Hilltop Community Resources," notes that it offers "supported living for adults with brain injuries." *See* https://hilltopbraininjuryservices.org/.

1143. Anthem has no network facilities psychiatric residential treatment facilities within 100 miles of Craig, Colorado.

1144. On the other hand, Anthem has four network skilled nursing facilities within 100 miles of Edwards, Colorado providing analogous levels of medical or surgical care to Anthem participants on the Western Slope of Colorado.

1145. Anthem also has 9 network skilled nursing facilities within 100 miles of Telluride, Colorado providing analogous levels of medical or surgical care to Anthem participants on the Western Slope of Colorado.

1146. Anthem also has 11 network skilled nursing facilities within 100 miles of Montrose, Colorado providing analogous levels of medical or surgical care to Anthem participants on the Western Slope of Colorado.

1147. Anthem also has 15 network skilled nursing facilities within 100 miles of Gunnison, Colorado providing analogous levels of medical or surgical care to Anthem participants on the Western Slope of Colorado.

1148. Anthem also has 4 network skilled nursing facilities within 100 miles of Craig, Colorado providing analogous levels of medical or surgical care to Anthem participants on the Western Slope of Colorado.

1149. While Anthem ensures that it has an adequate number of network skilled nursing facilities across the Western Slope of Colorado to treat its participants, Anthem entirely neglects its obligation under applicable network adequacy laws, failing to provide even a single network psychiatric residential treatment center anywhere in the western half of Colorado capable of treating patients with mental health and substance use disorder issues.

1150. Psychiatric residential treatment centers provide a core treatment for many mental health

and substance use disorders, and are an essential level of care for treating individuals with long-lasting, treatment-resistant and sub-acute mental health or substance use issues.

1151. Psychiatric residential treatment centers provide an intermediate level of care to individuals who do not have symptoms severe or sudden enough in onset to warrant hospital care, but who require the security and supervision of a 24/7 treatment environment because they cannot be safely treated on an outpatient basis without risk of relapse.

1152. Where Anthem plans cover mental health and substance use disorder care as well as medical/surgical care, Anthem's wholly insufficient network of psychiatric residential treatment facilities fails to provide a core treatment for mental health and substance use disorders while, in contrast, Anthem successfully meets the needs of participants seeking network medical or surgical care at skilled nursing facilities.

1153. By failing to offer any network psychiatric residential treatment centers on the Western Slope of Colorado, Anthem forces participants and beneficiaries seeking sub-acute residential treatment of mental health and substance use disorders to pursue out-of-network treatment options that are more expensive to the participants and beneficiaries.

1154. As mentioned above, Anthem's insufficient network often denies its insureds access to care altogether because they cannot afford the higher out-of-pocket maximums and deductibles Anthem charges for out-of-network care, forcing them to forego critical treatment.

1155. On the other hand, participants and beneficiaries seeking sub-acute medical or surgical care in skilled nursing facilities have numerous network options on the Western Slope.

1156. By failing to maintain an adequate network of psychiatric residential treatment facilities on the Western Slope, Anthem violates MHPAEA.

1157. Accordingly, Anthem's failure to maintain an adequate network of sub-acute residential

153

treatment centers caring for individuals with both mental health and substance use disorders as compared to its much more substantial network of skilled nursing facilities violates MHPAEA.

1158. The same is true with respect to Anthem's failure to maintain an adequate network of facilities providing partial hospitalization treatment to patients with mental health and substance use disorders.

1159. APN Lodge also provides partial hospitalization treatment to Anthem participants and beneficiaries in Colorado.

1160. There are substantially more network intermediate care units, day treatment programs, and transitional care facilities focused on medical/surgical care in Western Colorado than there are network partial hospitalization facilities capable of treating mental health and substance use disorders.

**Network Insufficiency:**

**Anthem Acknowledges Its Failure to Meet Geographic Access Standards**

1161. As noted in Anthem's June 21, 2024 Colorado Individual-Small Group Carrier Network Adequacy Summary and Attestations Form ("2024 Attestation"), Anthem itself acknowledges that it does not meet the state of Colorado's geographic access standards as articulated by the Colorado Division of Insurance's regulations.

1162. 3 CCR 702-4, Amended Regulation 4-2-53[13] imposes network adequacy requirements on insurers conducting business in the state of Colorado, including requirements that they contract with sufficient numbers of facilities to meet the needs of Colorado insureds and that they guarantee at least one provider of several types of care is available network within

---

[13] The implementing regulations for C.R.S. §10-16-704.

a specified maximum road travel distance of any enrollee.

1163. This regulation designates every Colorado county by population density and imposes requirements accordingly. The designations are Large Metro, Metro, Micro, Rural, and Counties with Extreme Access Considerations ("CEAC").

1164. This regulation requires insurers in Colorado to have network inpatient and residential behavioral health facility services within 15 miles of patients living in Large Metro-designated counties, within 45 miles of patients living in any Metro-designated counties, within 75 miles of any Micro or Rural-designated counties, and within 140 miles of any CEAC-designated counties.

1165. In contrast, the regulation requires insurers in Colorado to have network Skilled Nursing Facilities within 10 miles of patients living in Large Metro-designated counties, within 30 miles of patients living in any Metro-designated counties, within 60 miles of any Micro or Rural-designated counties, and within 85 miles of any CEAC-designated counties.

1166. In its 2024 Attestation, Anthem admitted that it failed to meet the State of Colorado's network adequacy requirements in numerous respects.

1167. In its 2024 Attestation, Anthem falsely asserted that it was unable to contract with any behavioral health facilities or substance use disorder facilities in Delta, Dolores, Eagle, Garfield, Gunnison, Hinsdale, Lake, Mineral, Moffat, Montezuma, Ouray, Pitkin, Rio Blanco, Routt, San Juan, or San Miguel[14] counties because there were "no Behavioral Health facilities" and "no Substance Use Disorder facilities available in these counties."

---

[14] Anthem admitted that its network was inadequate with respect to approximately 20 other Colorado counties, but Plaintiffs only list those on the Western Slope or in the Western half of Colorado. All of these counties are designated as either "Micro," "Rural," or "CEAC" counties under 3 CCR 702-4 Appendix A.

1168. APN Lodge is both a behavioral health and substance use disorder facility licensed by the State of Colorado and located in Eagle County, Colorado.

1169. As such, Anthem's stated reason for not complying with the State of Colorado's network adequacy requirements is patently false.

1170. The 2024 Attestation also contains a section outlining the corrective actions Anthem intended to take to correct the inadequacy of its network.

1171. With respect to both its lack of network behavioral health providers and its lack of substance use disorder providers, Anthem indicated that there was only one provider in available in Eagle County, Mind Springs Health, which only provides outpatient counseling and therapy services to Eagle County residents.[15]

1172. Anthem's 2024 Attestation did not indicate it was taking any action to improve its network of psychiatric residential treatment facilities. Instead, Anthem put the onus for action on the facilities themselves, indicating that it was "open to providers that can meet credentialing standards and are willing to contract with us."

1173. APN has been ready and willing to meet with Anthem and to negotiate an network contract, but Anthem have refused to enter such negotiations to date despite APN's attempts to do so.

1174. In conjunction with its pay-to-subscriber practices, Anthem's refusal to contract with any network psychiatric residential treatment providers or mental health and substance use disorder facilities on the Western Slope limits the ability of those in need of substance use disorder and mental health treatment, including the Assignor Patients, in Colorado to

---

[15] Mind Springs Health also operates a Residential Treatment Center exclusively for adults in Clifton, Colorado, which is in Mesa County. Mind Springs Health is not network with Anthem.

receive treatment, and jeopardizes the financial ability of APN to operate in the area.

1175. Anthem's systematic underpayment of the services APN provides is gradually driving one of the only providers of lifesaving mental health and substance use disorder treatment on the Western Slope out of business, jeopardizing plan participants' and beneficiaries', including the Assignor Patients', ability to access critical care.

1176. Anthem misrepresents the availability of mental health and substance use disorder providers in rural Colorado in order to avoid any obligation under Colorado law or MHPAEA to provide an adequate network of facilities capable of serving these communities.

1177. Anthem does not misrepresent the availability of analogous forms of medical/surgical treatment in order to avoid obligations to provide an adequate network; instead, it contracts with a sufficient number of medical/surgical facilities to serve these communities.

1178. These violations of MHPAEA by Anthem and the plans are breaches of fiduciary duty and also give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that Anthem's network is inadequate and violates MHPAEA;

(b) An injunction ordering Anthem to expand its offerings of network psychiatric residential treatment facilities on the Western Slope and ordering that it reprocess and pay out-of-network claims at a rate equal to the provider's billed charges until such time as Anthem's network is adequate;

(c) An injunction ordering Anthem to expand its offerings of network substance use detox facilities within 100 miles of Denver and ordering that it reprocess and pay out-of-network claims at a rate equal to the provider's billed charges until such time as Anthem's network

is adequate;

(d)    An order requiring the reformation of the terms of Anthem's plans and Anthem's facility

eligibility criteria as necessary to ensure Anthem offers meaningful coverage of psychiatric

residential treatment facilities on the Western Slope and of substance use detox facilities

within 100 miles of Denver;

(e)    An order requiring disgorgement of funds obtained by or retained by Anthem and the plans

as a result of their violations of MHPAEA;

(f)    An order requiring an accounting by Anthem of the funds wrongly withheld from Plaintiffs

as a result of Anthem's inadequate network of providers and consequential underpayment

of out-of-network providers of mental health and substance use disorder benefits;

(g)    An order based on the equitable remedy of surcharge requiring Anthem to provide payment

to Plaintiffs as make-whole relief for their losses;

(h)    An order equitably estopping Anthem from denying Plaintiffs' validly-assigned claims or

continuing to pay them at a rate less than billed charges while providing no network

treatment options in violation of MHPAEA; and

(i)    An order providing restitution from Anthem to the Plaintiffs for losses arising out of

Anthem's violation of MHPAEA.

(j)    An award of attorney fees as considered appropriate by the Court under 29 U.S.C.

§1132(g).

## <u>SECOND CAUSE OF ACTION</u>

**(Claim for violations of C.R.S. §10-16-704 and 3 CCR 702-4 Regulations 4-2-53 and 4-2-54**

**against Anthem, the Fully-Insured Plan Defendants)**

1179. Plaintiffs' second cause of action incorporates all of the allegations of their first cause of

action as though fully set forth herein.

1180. While the presentation or alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under Fed. R. Civ. P. 8, Plaintiffs contend they are entitled to appropriate remedies and relief under each cause of action.

1181. In cases where covered individuals in the state of Colorado must travel beyond the maximum distances outlined in 3 CCR 702-4, 4-2-53 Section 8 to receive care, C.R.S. §10-16-704(2)(c)(I)[16] requires the insurer to pay the nonparticipating provider the lesser of (A) the nonparticipating provider's billed charges, (B) a negotiated rate, or (C) in the absence of a negotiated rate, the greater of the carrier's average network rate for the relevant geographic area or the usual, customary, and reasonable rate for that geographic area.

1182. As mentioned above, this statute's implementing regulations impose maximum travel distances based on county population designations outlined in 3 CCR 702-4 Appendix A.

1183. As mentioned above, Anthem admits that it fails to satisfy the state of Colorado's network sufficiency requirements by its failure to contract with qualified providers, which in turn requires its insureds to travel more than the maximum distances outlined by 3 CCR 702-4 Appendix A to obtain residential treatment of mental health and substance use disorders, including in Eagle County and most other counties in Western Colorado.

1184. The only exceptions to the travel distance requirement under Colorado law require Anthem to demonstrate in its filings with the State of Colorado that it has made "unsuccessful good faith efforts to contract with local providers on reasonable terms." C.R.S. §10-16-

---

[16] In addition to this section, which is applicable to carriers offering managed care plans with out-of-network benefits, C.R.S. §10-16-704(2)(i)(I) imposes the same requirement on any health maintenance organization offering coverage in the state of Colorado.

704(2)(b)(I)(B).

1185. Anthem has made no such effort, and worse, misrepresents in its network adequacy attestation filed with the State of Colorado the availability of providers.

1186. For fully-insured plans subject to state law, Anthem is bound to pay Plaintiffs the amount required pursuant to C.R.S. §10-16-704(2)(c)(I): that is, the lesser of APN's billed charges, a negotiated rate, or the greater of the average network rate or usual and customary rate for the relevant geographic area in which APN's facilities operate.

1187. Because APN Lodge is the only provider of residential treatment in Eagle County and the surrounding area, Anthem has no average network rate for residential treatment services in Eagle County or the surrounding counties, and there is no usual and customary rate for these services other than APN's own rates.

1188. As such, Anthem is bound to pay either APN's billed charges or a negotiated rate. Because Anthem has refused to negotiate a rate with APN, and pursuant to §10-16-704(2)(c)(I)(C), neither Anthem nor APN are required to "attempt to negotiate a reimbursement rate," the only option Anthem has under applicable Colorado law is to pay APN's full billed charges.

1189. Instead, where Anthem *has* paid, it has reimbursed APN (or, improperly, the Assignor Patients rather than APN) at less than 40% of APN's average network rates with other insurance providers, an amount significantly less than the billed charges and in many cases less than APN's cost to provide the treatment it provides to Anthem insureds and others.

1190. As a result, APN has taken on significant financial losses that threaten its financial ability to continue operating as the only provider of this level of care in Eagle County and as one of the only facilities capable of providing this care to individuals on the Western Slope of Colorado.

160

1191. Anthem's actions threaten the survival of one of the only facilities providing residential treatment care for mental health and substance use disorders to the more than half a million Colorado residents of the Western Slope.

1192. If APN is forced to shut down, it will no longer be able to provide mental health and substance use disorder care to the substantial amount of Colorado veterans who rely on it as one of the only options for affordable, network treatment through their Health First Colorado and TRICARE insurance plans.

1193. Anthem's failure to satisfy Colorado's network sufficiency laws and regulations requires that it pay APN its billed charges rather than the reduced amount it has paid to APN (or, improperly in many cases, to the Assignor Patients).

WHEREFORE, the Plaintiffs seek relief as follows:

1. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined above;

2. Pre- and post-judgment interest to the date of payment on any amounts recovered by the Plaintiffs via restitution, surcharge, or disgorgement;

3. For the fully-insured plans and any other Plan Defendants subject to Colorado state law, the lesser of Plaintiffs' billed charges, a negotiated rate between APN and Anthem, or the greater of Anthem's average network rate for the relevant geographic area or the usual, customary, and reasonable rate for that geographic area;

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g) and any applicable Colorado state law, including C.R.S. §10-3-1116(1); and

5. Such further relief as the Court deems just and proper.

DATED this 3rd day of November, 2025.


*s/Sarah J. Baker*

161

Sarah J. Baker, #32806
SARAH J. BAKER PC
Post Office Box 4551
Eagle, Colorado 81631
Telephone: (970) 331-0799
sbaker@sbakerpc.com


s/ *Brian S. King*
Brian S. King, #4610
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com