**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01965-SKC-CYC

CSMN OPERATIONS LLC, et al.

v.

ROCKY MOUNTAIN HOSPITAL and MEDICAL SERVICE INC,
d/b/a ANTHEM BLUECROSS and BLUESHIELD, et al.

---

**JOINT REPLY IN FURTHER SUPPORT OF ANTHEM COLORADO'S
AND THE WELLS FARGO PLANS' MOTIONS TO DISMISS**

---

Rocky Mountain Hospital and Medical Service, Inc. dba Anthem Blue Cross
and Blue Shield ("**Anthem Colorado**") and Wells Fargo & Company Health Plan
("**Wells Fargo,**" together with Anthem Colorado, "**Defendants**") submit this joint
reply to Plaintiffs' opposition (ECF No. 359, "**Opposition**") to Defendants' Motions to
Dismiss (ECF No. 217; ECF No. 218, the "**Motions**").[1]

**<u>INTRODUCTION</u>**

Defendants' Motions demonstrated that Plaintiffs' claims should be dismissed
for multiple reasons. First, Patient Plaintiffs lack standing because they suffered no
injury-in-fact; they received treatment from APN and received all benefits to which
they were entitled under their plans. APN lacks standing to sue derivatively on their
behalf because the Assignment of Benefit ("**AOB**") forms executed by APN's patients

---

[1] Defined terms and abbreviations adopted in the Motions are used throughout this
Reply.

did not assign Parity Act claims and were prohibited by the plan documents. Second, the FAC is barred by the claim splitting doctrine as duplicative of APN's other lawsuit against Anthem Colorado. Third, Plaintiffs' claim for violation of the Parity Act has no basis in the language of the Act or regulations because the FAC merely compares the numbers of Behavioral Health/Substance Use Disorder ("BH/SUD") providers and Medical/Surgical ("M/S") providers. Plaintiffs' Parity Act claim also requests improper money damages. Fourth, Plaintiffs' claim under C.R.S. § 10-16-704 is neither permitted as a private right of action nor viable substantively, and does not apply to self-funded plans.

Plaintiffs' Opposition fails to salvage their lack of standing or their substantive claims and fails to even acknowledge many of Defendants' dispositive arguments. Perhaps most important, the Opposition does nothing to explain how APN's out-of-state patients could maintain claims under the Parity Act or state law that are purportedly based on Anthem Colorado's network of BH/SUD providers in Colorado. These patients made the personal decision to travel hundreds or thousands of miles to seek out-of-network treatment from APN. There is no allegation that these patients encountered inadequate networks in their home states, or that any aspect of Anthem Colorado's network impacted their decision to receive treatment from APN.

The Opposition also presents a new theory of Plaintiffs' Parity Act claim that mischaracterizes a statement in Anthem Colorado's filings with the Division of Insurance, arguing that this statement allegedly shows an "internal process" that

Anthem Colorado employs to allegedly refuse to contract with BH/SUD providers like APN. Yet APN's novel theory is not pleaded in the FAC, and its reference to a single, mischaracterized sentence fragment in Division of Insurance filings does not show a treatment limitation with respect to Anthem Colorado's internal processes.

The Opposition fails to overcome the dispositive arguments in the Motions, and the FAC must be dismissed, because: 1) Plaintiffs incorrectly describe the standard of review; 2) the Opposition fails to establish Patient Plaintiffs' injury-in-fact or to justify the failure to name each Patient Plaintiff; 3) APN's efforts to bolster its AOBs do not overcome the persuasive authority in *Aetna*; 4) APN cannot establish waiver of anti-assignment provisions in the plan documents; 5) APN's improper claim splitting warrants dismissal; 6) Plaintiffs' unpled Parity Act theory is insufficient to establish an actionable treatment limitation; 7) Plaintiffs acknowledge that the FAC seeks money damages not permitted through an ERISA fiduciary claim; and 8) the Opposition fails to establish a private cause of action under Colorado statutes.

**ARGUMENT**

### A. Plaintiffs Incorrectly Describe the Standard of Review

Plaintiffs argue that Defendants' challenge of the AOBs is "so intertwined with the merits" as to convert the Motions to motions for summary judgment. (ECF No. 359 at 15.) This is incorrect. First, the AOBs were incorporated into the FAC by reference; the Court may consider the AOBs without converting the Motions to Rule 56 motions. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Second, the jurisdictional question is not intertwined with the merits because subject matter jurisdiction is not "dependent on the same statute which provides the substantive claim in the case." *Pringle v. United States,* 208 F.3d 1220, 1222 (10th Cir. 2000). Here, jurisdiction turns on common law and whether the AOBs validly assigned the rights APN purports to assert. *See CSMN Operations LLC et al. v. Aetna Life Ins. Co.*, *et al.*, 2025 WL 2513588 at *12 (D. Colo. Sept. 2, 2025) ("*Aetna*").

**B. The Opposition Fails to Show That Patient Plaintiffs Have Standing**

Plaintiffs incorrectly contend that "[n]o Defendant meaningfully challenges the standing of the [Patient] Plaintiffs themselves . . . ." To the contrary, Anthem Colorado's Motion showed that the Patient Plaintiffs have no Article III standing because they plead no injury-in-fact, which is fatal to the Patient Plaintiffs' claims and APN's derivative claims. (ECF No. 217 at 14-15.) Elsewhere in their brief, Plaintiffs contend that the Patient Plaintiffs can show "discrete injuries" despite their receipt of benefits because they allegedly suffered an "adverse benefit determination" under 29 C.F.R. § 2560.503-1(m)(4)(i) when "Anthem's inadequate network" caused a "reduction" in their benefits payments or a partial failure to "make payment." (Opp. 26.) This is incorrect; an "adverse benefit determination" is—as the name implies— limited to "benefits." The "benefits" eligible to any ERISA plan member are limited to those "<u>due under the terms of the plan</u>." *Kidneigh v. UNUM Life Ins. Co of Am.*, 345 F.3d 1182, 1185 (10th Cir. 2003) (emphasis added, cleaned up). Plaintiffs cannot show an adverse benefits determination because they do not allege a failure to pay

4

benefits actually due to any Patient Plaintiff. *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California,* 2016 WL 6892140, at \*8 (C.D. Cal. Nov. 22, 2016) ("Complete payment to the statutory beneficiary is simply not a reduction, termination, or failure to make payments, because payment was made.")

Plaintiffs also argue that certain Patient-Plaintiffs should be permitted to proceed anonymously, or alternatively that dismissal is improper "until a 'reasonable time' has been allowed" for the unnamed Patient Plaintiffs to be identified.  (ECF No. 359 at 22.)  But a reasonable time has already elapsed: this case was filed on June 24, 2025, almost a year ago and the identity and purported claims of the Patient Plaintiffs were known since before that time. Courts in this Circuit have assessed a "reasonable time" as a matter of days or a few months; it is not a flexible, moving target as Plaintiffs appear to be requesting. *See, e.g. May v. KSL Assoc. Grp., Inc.*, 2024 WL 4557231, at \*5 (D. Utah Oct. 23, 2024) (ordering "reasonable time" of ten weeks to substitute trustee as real party in interest under Rule 17(a)(3)); *Raw Crude Oil & Gas, LLC v. Ovintiv Mid-Continent Inc.*, 2021 WL 6328011, at \*2 (D. Colo. Oct. 4, 2021) (ordering "reasonable time" of 30 days to substitute in real party in interest.)

Further, Plaintiffs are unable to demonstrate "exceptional circumstances" that would warrant pseudonymous proceedings here.[2] The cases Plaintiffs rely on do not support this contention. (ECF No. 359 at 23.) In *Femedeer v. Haun*, the Tenth Circuit

---

[2] To the extent Plaintiffs are requesting leave to proceed pseudonymously in their Opposition, this request must be denied because a motion may not be included in response to an original motion. D.C.COLO.LCivR 7.1(d).

5

rejected a plaintiff's effort to proceed pseudonymously because he "has not established real, imminent personal danger, and the disclosure of Appellee's identity in the caption of this lawsuit is not coterminous to the harm he is seeking to avoid." 227 F.3d 1244, 1246 (10th Cir. 2000). In *Tony M. v. United Health Care Insurance Co.*, the complaint at issue contained detailed accounts of abuse of a minor. 2025 WL 357724, at \*1 (D. Utah Jan. 31, 2025). In contrast, the present case concerns the payment of health benefits and is not about the substantive treatment any Patient Plaintiff received at APN. Plaintiffs have not met their burden of demonstrating any exceptional circumstances warranting pseudonymous proceedings, and Plaintiffs' delay in naming the real parties in interest goes well beyond any reasonable time that could be permitted under Rule 17(a)(3).

## C. APN's AOBs Do Not Assign Parity Act Claims

The Opposition fails to address the argument that APN cannot pursue derivative claims against Anthem Colorado based on AOBs from Patient Plaintiffs that were not Anthem Colorado members, apparently conceding that issue. Plaintiffs' arguments on the issues it chose to address are not sufficient to avoid dismissal.

First, APN asserts essentially the same arguments that were rejected in *Aetna*, hoping for a different result before this Court and criticizing Judge Wang's holding as "incorrect." (ECF No. 359 at 19–22.) Judge Wang held APN's AOBs[3] did not assign

---

[3] Plaintiffs do not contest that the AOBs at issue in *Aetna* are substantially identical to the AOBs at issue here. *See generally,* ECF No. 359.

Parity Act claims because they granted APN only the patients' "rights in and to the Benefits." *Id.* at \*12. Plaintiffs argue that "Judge Wang's decision did not actually address the scope of the language in the AOB; it relied on the title of [the Authorized Representative] subsection and the absence of allegations that assignments occurred to justify moving past it." (ECF No. 359 at 20.) According to Plaintiffs,

> This is a far cry from the case at bar, where Plaintiffs specifically allege the presence of such assignments and the AOB form itself plainly requests the assignment and transfer of "any and all" rights to APN, including "any and all other rights permissible under ERISA, state and or federal laws."

(*Id.* at 20-21.) Plaintiffs' efforts to distinguish or disagree with the holding in *Aetna* should be rejected. Plaintiffs are incorrect that the *Aetna* decision did not address the scope of the language in the AOB; it was "[b]ased on the unambiguous language of the AOBs." *Aetna,* 2025 WL 2513588, at \*12. Further, Plaintiffs cannot plead around the Court's construction of the AOBs in *Aetna* with allegations that the Patient Plaintiffs "validly assigned their ERISA rights in and to the benefits at issue, as well as their rights to pursue litigation under 29 U.S.C. § 1132, to APN." (*See e.g.* ECF No. 127 at ¶¶ 328, 331.) Those allegations are based on the AOBs, or the UB-04 claim forms that were also based on the AOBs. *Aetna* holds that the AOBs are insufficient to assign the right to pursue Parity Act claims. APN's pleadings cannot engineer an AOB that has different legal consequences from the AOBs that the FAC incorporates by reference. "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1145 (10th Cir. 2023) (cleaned up, quotations omitted).

Further still, the assignments Judge Wang found to be absent involved

assignments by the insurance carrier, not by the patient. The FAC is similarly devoid

of allegations that any carrier assigned any member's rights. Judge Wang's order

explained that "even if the Provider Plaintiffs are correct that the Authorized

Representative provision allows a Patient's insurer to assign the Patient's MHPAEA

rights, there is no allegation that any such assignment occurred." *Aetna,* 2025 WL

2513588, at \*12 (emphasis added). Judge Wang appears to be referencing the

Authorized Representative section of the AOB that

> authorize[s] my insurer to assign and transfer any and all applicable plan
> Benefits and rights to Provider, including the right to receive any applicable
> plan documents/remedies or disclosures, to file claims and receive payment
> of those claims on my behalf, and to pursue appeals and grievances,
> administrative reviews/hearings, litigation and other actions on my behalf.

*See* ECF No. 217-3 at 2. The Authorized Representative section, by its terms, was not

an assignment, but rather "authorized" the insurer (not the patient) to make this

assignment. The FAC contains numerous allegations that APN's patients assigned

various rights through the AOBs, but it does not contain any allegation that "a

Patient's insurer" assigned any "Patient's MHPAEA rights." *Aetna,* 2025 WL

2513588, at \*12 (emphasis added).

Second, the cases Plaintiffs rely on do not warrant a different result from the

holding in *Aetna.* In *Angelina Emergency Medical Associates PA v. BCBS of Alabama*

("*Angelina*"), the Fifth Circuit reached the same result as in *Aetna,* finding that the

assignments conferred the right to sue for benefits. 156 F4th 505, 517 (5th Cir. 2025);

*Aetna*, 2025 WL 2513588 at *12. *Angelina* did not explicitly address whether an assignment could be extended beyond its plain language to allow derivative standing to sue under the Parity Act. *Giacalone Healthcare, Inc. v. Highmark Blue Cross Blue Shield* is not instructive either because it only addresses assignments of claims to sue for payments of benefits under ERISA, not whether the assignment could be extended to cover Parity Act claims. 2013 WL 5707455 at *3 (M.D. Pa. Oct. 18, 2013).[4]

### D. APN's AOBs Are Prohibited by the Plan Documents

Plaintiffs argue that the anti-assignment provisions in the plan documents at issue were either invalidated by C.R.S. § 10-16-106.7(1) and (2) for fully insured plans, or waived in circumstances where payment was made to APN. (ECF No. 359 at 16-19.) These arguments fail. First, C.R.S. § 10-16-106.7(1) does not invalidate the anti-assignment provisions as to Plaintiffs' Parity Act claim, regardless of whether it is preempted by ERISA. The statute only requires insurers to "allow . . . [a] covered person under the policy to assign . . . payments due under the policy." *See* C.R.S. § 10-16-106.7(1)(a) (emphasis added). This statutory language is not broad enough to invalidate prohibitions on the assignment of Parity Act claims that Plaintiffs are pursuing in this case. In Colorado, statutes are interpreted to "apply the plain and ordinary meaning of the provision" and courts "do not add words to the statute" that

---

[4] Plaintiffs' efforts to distinguish *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, fail. Like here, "[t]he Assignment nowhere indicates that, by executing the assignment, patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty." 770 F.3d 1282, 1292 (9th Cir. 2014)

do not exist. *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007).

Second, Plaintiffs' waiver argument fails to point to any allegations in the FAC meeting the standard for waiver—*i.e.¸* facts amounting to "a clear, unequivocal[,] and decisive act of [Defendants] with knowledge of such right and an evident purpose to surrender it." *Aetna*, 2025 WL 2513588, at *9 (quoting *Am. Ortho. & Sports Med. v. Indep. Blue Cross*, 890 F.3d 445, 454 (3d Cir. 2018)). In fact, Plaintiffs have not plead any purported "waiver" by any Defendant; the word "waiver" is not in the FAC. Plaintiffs cannot rely on unpled allegations to defeat a motion to dismiss. *See Burnett v. Amrein*, 2006 WL 2859625, at *9 (D. Colo. Oct. 3, 2006). For Claims paid to the Patient Plaintiffs, it would appear that Plaintiffs acknowledge no waiver occurred.

The FAC's allegations that some payments were made to APN also fail because "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying [an] informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit." *Am. Orthopedic & Sports*, 890 F.3d 445, 454 (3d Cir. 2018) (citing multiple cases). Even "payment to an assignee and 'routine processing of a claim or appeal' does not effect waiver of an anti-assignment provision." *Aetna*, 2025 WL 2513588, at *9 (citation omitted); *see also Feder v. U.S. Bancorp,* 2025 WL 1371891, *4 (D. Minn. May 12, 2025) (routine processing of claims and appeals do not demonstrate an intentional relinquishment of a right to enforce anti-assignment clause); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 2014 WL 4058321, *3 (S.D.N.Y. Aug. 15, 2014)

10

("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions.")

With respect to Wells Fargo, Plaintiffs' argument that it did not provide plan documents to APN demonstrates Wells Fargo's enforcement of the plan terms. (ECF no. 127 ¶¶ 27-28, 359.) The plan permits the administrator to pay amounts directly to the provider, but states that such payment does not act as an assignment of any other rights beyond payment, including the "right to request plan documents." (*See* ECF No. 218-1 at 417-18.) Plaintiffs' suggestion that Defendants should have "provided plan documents outlining an anti-assignment provision" to APN (ECF No. 359 at 18) is an act which Defendants had no obligation to perform and the nonperformance of which cannot constitute the intentional relinquishment of a right by Defendants. *See, e.g.*, *Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, 2020 WL 1983693, at \*7 (D.N.J. Apr. 27, 2020) (no waiver based on "Defendants fail[ure] to invoke the applicable anti-assignment clause during the[ir] conversations [with providers]. . . . it is routine and does not demonstrate an intentional relinquishment of any known rights."); *Atrium Med. Ctr. v. UnitedHealthcare Ins. Co.*, 2020 WL 5423884, at \*7 (S.D. Ohio Sept. 10, 2020) ("[W]ithout any legal duty to volunteer the fact of anti-assignment provision, United's failure to advise Atrium of this provision falls short of an 'intentional relinquishment'"); *Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*, 399 F. Supp. 3d 241, 254 (D.N.J. 2019) ("the 'failure to apprise' Sleep Tight of any invalid assignments by Aetna does not foreclose Aetna's ability to

11

enforce the anti-assignment provisions").

Further, if APN received payments directly from Wells Fargo, which the plan permits, those payments do not convert APN into an assignee of rights that go beyond payment, contrary to the terms of the plan document. *Cf. Riverview Health Institute LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 523 (6th Cir. 2010) (payment to a provider does not create a "viable estoppel claim" when the plan clearly prohibits assignment). Because the Court must give effect to the terms of the plan document, APN's waiver argument fails in the face of the plan document's unambiguous anti-assignment provisions. *See U.S. Airways v. McCutchen*, 569 U.S. 88, 101 (2013) ("The statutory scheme . . . is built around reliance on the face of written plan document.") (cleaned up); *Cooperman v. Empire HealthChoice HMO*, 2025 WL 950675, at *10 (S.D.N.Y. March 28, 2025) ("Courts are particularly disinclined to find waiver based on direct payments where—as here—the terms of the plan otherwise authorize the administrator to make payments directly to the provider.").[5]

Plaintiffs' reliance on *Angelina* is misplaced because the holding in that case was based on principles of estoppel, not waiver as APN advocates for in this case. This is a significant distinction, because the court's finding that estoppel applied in *Angelina* was based, in part, on the defendants' "discussion with the Groups,"

---

[5] Plaintiffs argue that the Court should not grant dismissal in full based on anti-assignment provisions because not all plan documents have been provided for the Claims at issue. (ECF No. 359 at 17 n.64.) Defendants acknowledge that the Court may order limited jurisdictional discovery for the sole purpose of exchanging plan documents to determine which plans do not allow assignment.

including responses that the plans provided to the provider-submitted appeals. 156 F.4th at 520, 512. In contrast, here, there are no allegations that any Defendant communicated with APN beyond the routine processing and payment of claims. The holding in *Angelina* was also guided by the care at issue: emergency services that required the hospitals to "treat patients suffering medical emergencies regardless of their ability to pay and without inquiring into the existence or nature of the patients' insurance coverage." *Id.* at 511. This matter presents the opposite scenario, where a majority of APN's patients travelled from out of state based on their personal decision to receive out-of-network treatment from APN. There are no allegations that APN had an inability to seek preauthorization for the treatment APN agreed to provide. Further, the *Angelina* decision contradicts virtually every other federal appellate court's determination that estoppel is not available to overcome unambiguous plan terms except in the most egregious circumstances, if at all.[6]

### E. APN Has Improperly Engaged in Claim-Splitting.

---

[6] *See Martinez*, 795 F.3d at 1223 (estoppel arguments not viable against carrier absent "egregious circumstances"); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991) (same); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) ("Principles of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents"); *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 508–09 (7th Cir. 2011) (estoppel not available to circumvent plan's written terms absent "extreme circumstances"); *cf. also Retirement Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 484 (4th Cir. 2017) ("estoppel principles have not been permitted to vary the written terms of a plan) (cleaned up); *Neumann v. AT&T Commc'ns, Inc.*, 376 F.3d 773, 784 (8th Cir. 2004) (plaintiff "may not use an estoppel theory to modify the unambiguous terms of an ERISA plan"); *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935–36 (11th Cir. 2021); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993).

The Opposition argues that APN's claim-splitting should be allowed because (1) the Patient Plaintiffs should be able to maintain claims against Anthem Colorado; (2) APN included self-serving statements superficially disavowing claim-splitting in the FAC; and (3) APN allegedly did not know of the FAC claims at the time of its prior suit.  (ECF No. 359 at 27–28.)  None of the arguments hold.

First, the claims against Anthem Colorado should be dismissed as to APN regardless of whether claims involving other Patient Plaintiffs survive.

Second, APN's self-serving statement that its Parity Act claim is not based on "Anthem's pay-to-subscriber practices" cannot change the substantive identity of the subject matter and cause of action. FAC ¶ 1112 n.8. Both sets of claims arise out of the same transaction for the numerous substantive and factual reasons outlined in Anthem Colorado's Motion. ECF. No. 217 at 17-19. Even if this suit and APN's prior suit cite different ERISA provisions, claim splitting applies because both center on the same transaction. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999).

Third, the FAC itself rebuts the timeline presented in the Opposition. APN knew of the alleged network issues in "September 2023 at the earliest."  (ECF No. 127 ¶ 1123.)  APN did not file its first suit until February 2024. APN's subsequent attention on Anthem's network attestations does not erase its prior knowledge of the alleged network issues that form the basis of this Action. In other words, APN "cannot avoid supplementing [its] complaint with facts *that are part of the same transaction* asserted in the complaint, in the hope of bringing a new action arising out of the same

14

transaction on some later occasion." *Hernandez v. Asset Acceptance, LLC*, 970 F.Supp. 2d 1194, 1198 (D. Colo. 2013) (quotations omitted).

### F. Plaintiffs Fail to Plead a Parity Act Violation.

The Opposition acknowledges that the FAC fails to identify any plan term in support of either a facial or as-applied Parity Act claim. More tellingly, the Opposition does not attempt to explain how the dozens of out-of-state Patient Plaintiffs would have a valid Parity Act claim based on the makeup of Anthem Colorado's provider network. These Patient Plaintiffs' personal decisions to travel away from their home state to seek treatment with APN precludes them from plausibly alleging that their alleged Parity Act injury is "causally connected to the conduct complained of . . ." *See, e.g.*, *Robert B. v. Premera Blue Cross*, 701 F. Supp. 3d 1153, 1183 (D. Utah 2023).

In an effort to bolster their Parity Act claim beyond merely tallying the numbers of Anthem Colorado's in-network BH/SUD providers and M/S providers, the Opposition presents a novel theory not alleged in the FAC:

> Plaintiffs have identified an internal process by which Anthem refuses to contract with facilities capable of providing promised MH/SUD services under the Plans: Anthem's regulatory filings in Colorado falsely claim that facilities like APN do not exist to be contracted with, and it uses this statement to justify a refusal to expand its network to provide mental health services in the relevant geographic areas.

ECF No. 359 at 31. This unpled theory fails to establish a Parity Act claim for multiple reasons. First, it fails as a matter of pleading because the FAC does not allege that Anthem Colorado had an "internal process" that violates the Parity Act. "Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an

15

opposition to a motion to dismiss." *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010). Further, the lynchpin of Plaintiffs' theory depends on a mischaracterization of Anthem Colorado's network attestation filings, which Plaintiffs chose not to attach to either the FAC or the Opposition. Plaintiffs offer an out-of-context quotation of a sentence fragment from the attestation, claiming that Anthem Colorado allegedly misrepresented that there were "no Behavioral Health facilities" and "no Substance Use Disorder facilities available in" the county where APN is located. (ECF No. 127 ¶¶ 1167-68.) To the contrary, Anthem Colorado's attestation explained that there were no *in-network* facilities available to Anthem Colorado's members, not that there were no facilities in existence in these counties. (*Id.*) While the Court is required to draw reasonable inferences in Plaintiffs' favor on a motion to dismiss, Plaintiffs' misinterpretation is not reasonable because the attestation was meant to describe Anthem Colorado's network, not catalogue the existence and numbers of different types of providers in each county.[7]

Second, regardless of how the Court construes the network attestation for purpose of this Motion, it does not establish a disparately applied treatment limitation because it does not shed light on any alleged "internal process." In fact, Plaintiffs appear to indicate that no such process exists. The FAC indicates that

---

[7] *See, e.g.* ECF No. 217-4 at 14, Regulation 4-2-53 § 8 ("carrier shall attest that at least one (1) of each of the providers and facilities listed below is available within the maximum road travel distance of any enrollee in each specific carrier's network.")

Anthem Colorado does not have a process to recruit providers when it criticizes Anthem Colorado's statement that it is "open to providers that can meet credentialing standards and are willing to contract with us." (ECF No. 127 ¶ 1172.) The Opposition questions whether there "*is* any process" at all. (ECF No. 359 at 30 (emphasis in original).) At most, the FAC alleges that "Anthem ensures that it has an adequate number of network skilled nursing facilities across the Western Slope." (ECF No. 127 ¶ 1149.) This allegation, however, does not point to any internal process; instead, it is supported only by Plaintiffs recitation of the numbers of M/S providers in Anthem Colorado's network versus the number of BH/SUD providers. (ECF No. 359 at 31 n. 121.) As detailed in Anthem Colorado's Motion, courts routinely reject plaintiffs' efforts to establish Parity Act liability by counting the numbers of BH/SUD providers versus M/S providers.  (ECF No. 217 at 21-22.)

Plaintiffs' reliance on *Ryan S. v. UnitedHealth Grp., Inc.*, does not help their case. 98 F.4th 965, 969 (9th Cir. 2024). The court in *Ryan S.* held that a plaintiff advancing an "internal process challenge" under the Parity Act "needs to provide some reason to believe that the denial of MH/SUD claims was impacted by a process that does not apply to medical/surgical claims." *Id.* at 973. Here, Plaintiffs cannot point to any process that applies to BH/SUD claims (or BH/SUD providers), and even points to statements by Anthem Colorado indicating that no such process exists. (ECF No. 127 ¶ 1172.) The court in *Ryan S.* acknowledged that the plaintiff had identified a specific process that applied to BH/SUD claims but not to M/S claims, as detailed

17

in a state agency report outlining "[t]he use of an algorithmic process to trigger additional levels of review" and which "concluded that UHC processed MH/SUD claims differently." *Ryan S.*, 98 F4th at 973. In contrast, Plaintiffs cannot identify any internal process that it seeks to put at issue, or identify any aspect of that alleged process that would apply differently to BH/SUD versus M/S claims or providers.

Plaintiffs' efforts to explain its Parity Act theory boils down to a conviction that Anthem Colorado should have an "obligation to provide an adequate number of in-network residential treatment facilities on the Western Slope" under the Parity Act. (ECF No. 359 at 32.) The Parity Act simply does not require this, nor is Anthem Colorado affirmatively required to recruit providers under Colorado law. *See* C.R.S. § 10-16-704(2)(c)(I)(C); *id.* § 10-16-704(2)(j).

### G. Plaintiffs' Request for Monetary Damages Is Improper

Plaintiffs' Opposition suggests that they may properly seek monetary damages because they "do not allege that their injuries relate to denial of benefits" and because their requested monetary damages qualify as a traditional equitable remedy. (ECF No. 359 at 33.) However, elsewhere in their Opposition, Plaintiffs insist that their claims <u>are</u> for denials of benefits.  (*Id.* at 26 (explaining that Plaintiffs' claims arise from "an 'adverse benefit determination'" in the form of "a denial, *reduction*, or termination of, *or a failure to provide or make payment (in whole or in part) for*, a benefit.").)  *See Moore v. Berg Enters., Inc.*, 201 F.3d 448, 1999 WL 1063823, at *2 n.2 (10th Cir. 1999) ("[Plaintiff] is not entitled to repackage his denial of benefits claim

18

as a claim for breach of fiduciary duty and seek relief under section 1132(a)(3)."
(cleaned up)). "And 'money damages are, of course, the classic form of *legal* relief'"—
not a traditional equitable remedy. *See Great-West Life & Annuity Ins. Co. v.
Knudson*, 534 U.S. 204, 210 (2002) (original brackets and quotations omitted).

### H. Plaintiffs Fail to Plead a Colorado Statutory Violation.

As detailed in the Motions, Plaintiffs fail to plead a Colorado statutory
violation, and the Opposition fails to demonstrate otherwise. First, Plaintiffs concede
that their state law claims do not apply to Claims relating to self-funded plans. (ECF
No. 359 at 34 n. 133.) Second, Plaintiffs argue that C.R.S. § 10-16-707 "explicitly
contemplates a private action." Opp. at 35. Yet the statute says the opposite – the
Commissioner is vested with enforcement powers. C.R.S. § 10-16-707(1). Section 10-
16-707(1) gives the Commissioner discretion to choose from the different enforcement
mechanisms at its disposal; it does not create the option for a private action. Section
10-16-707(2) merely prohibits the Commissioner from acting as an adjudicator of
disputes between plans and providers—it in no way limits the Commissioner's
enforcement authority. If anything, this provision shows that plaintiffs like APN are
not within the class of persons intended to benefit from the statute.

Third, Plaintiffs rely on *Pinon Sun Condo Ass'n v. Atain Specialty Ins. Co.* to
argue that the Court may imply a private remedy even though the statute already
provides an enforcement mechanism. 2019 WL 4747673 (D. Colo. Sept. 27, 2019). Yet
the court reaches the opposite holding in *Pinon*, explaining that no private right of

19

action existed for the statute at issue because, like here, the statute was "not totally silent on the matter of remedy." *Id.* at *8 (cleaned up). Plaintiffs' cases "acknowledge that the legislative decision to enact a particular administrative remedy to redress a statutory violation is consistent with a legislative intent to preclude a private civil remedy. . ." *Allstate Ins. Co. v. Parfey*, 830 P.2d 905, 910 (Colo. 1992).

Fourth, the Opposition fails to address the numerous substantive flaws of its state law claim as outlined in Anthem Colorado's Motion. (ECF No. 127 at 27-29.) Apparently conceding that Section 10-16-704(2)(c)(I) is inapplicable to Patient Plaintiffs that live outside Colorado, Plaintiffs shift focus to Colorado-resident Patient Plaintiffs—alleging the "total unavailability of several types of critical MH/SUD care in non-metro, rural areas of Colorado."  (ECF No. 359 at 36.) However, the FAC does not allege that any APN patient lives in a rural area or the Western Slope. (*See generally*, ECF No. 127.) The FAC does not allege that the payment obligations in Section 10-16-704(2)(c)(I) apply here.

## CONCLUSION

Defendants' Motions should be granted and Plaintiffs' claims should be dismissed.

April 1, 2026

Respectfully submitted,

*/s/ Blake A. Gansborg*

Blake A. Gansborg
Halley T. Herbst
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street, Suite 500
Denver, CO  80202
Telephone: (303) 583-9900
Facsimile: (303) 583-9999
blake.gansborg@nelsonmullins.com
halley.herbst@nelsonmullins.com

Bradley D. Barringer
Jennifer L. Jokerst
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500
brad.barringer@nelsonmullins.com
jenni.jokerst@nelsonmullins.com

*Attorneys for Defendants Rocky Mountain Hospital and Medical Service, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Nevada), Anthem Blue Cross and Blue Shield, Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Blue Cross and Blue Shield of Georgia), Anthem Blue Cross and Blue Shield Nevada, Blue Cross of California dba Anthem Blue Cross, and Anthem Blue Cross Life and Health Insurance Company dba Anthem Blue Cross (incorrectly identified on caption as Anthem Blue Cross Blue Shield of California), Anthem Health Plans of Virginia, Inc. dba Anthem Blue Cross and*

21

*Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Virginia), Anthem Health Plans, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Connecticut), Anthem Health Plans of Kentucky, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Kentucky), Anthem Health Plans of Maine, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Maine), Community Insurance Company dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Ohio), Blue Cross Blue Shield of Wisconsin dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Wisconsin), Anthem Insurance Companies, Inc. dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Indiana), Healthy Alliance Life Insurance Company dba Anthem Blue Cross and Blue Shield (incorrectly identified on caption as Anthem Blue Cross and Blue Shield Missouri), and The Wells Fargo & Company Health Plan*

22

23

## CERTIFICATE REGARDING USE OF
## GENERATIVE ARTIFICIAL INTELLIGENCE

Undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

*/s/ Blake A. Gansborg*
of Nelson Mullins Riley & Scarborough LLP

23

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of April, 2026, I electronically filed the **JOINT REPLY IN FURTHER SUPPORT OF ANTHEM COLORADO'S AND THE WELLS FARGO PLANS' MOTIONS TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of the filing to all attorneys of record.

*/s/Blake A. Gansborg*
Blake A. Gansborg

24